Jeffrey A. SAUL, Plaintiff-Appellant,

v.

UNITED STATES of America; Ray Larsen; Colleen St. Louis; John Doe St. Louis, Defendants-Appellees.

No. 89-35698.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1990.

Decided March 11, 1991.

---

Samuel Kornhauser, Rose & Kornhauser, San Francisco, Cal., for plaintiff-appellant.

Richard A. Olderman, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before WRIGHT, SCHROEDER and NORRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Today we consider what remedies are available to a federal employee who has work-related differences with his supervisors. Specifically, we decide whether a federal employee may use either a constitutional or a common law tort theory to sue his supervisors over disputes growing out of his employment.

## BACKGROUND

Jeffrey Saul worked for the Social Security Administration (SSA) in Seattle as a Claims Representative. He also served as a union representative for the American Federation of Government Employees (AFGE). His supervisors at the SSA included Ray Larsen, an Area Director, and Colleen St. Louis, Saul's immediate supervisor.

Saul sued Larsen and St. Louis in state court, charging constitutional and common law torts. He alleged that St. Louis had seized and opened personal mail addressed to him at the office, thereby violating his constitutional rights and invading his privacy. He further alleged that Larsen had twice defamed him [1] and that both supervisors had tortiously inflicted emotional distress upon him.[2]

The defendants removed to federal district court by invoking 28 U.S.C. § 1442(a)(1). They convinced the district court that they were entitled to absolute immunity under the doctrine of *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959),[3] and Judge McGovern entered summary judgment for them. Saul appealed the district court's acceptance of removal jurisdiction and its determination that his supervisors were immune from his claims.

We affirmed initially by an unpublished memorandum. Simultaneously, however, the Supreme Court altered the analysis of federal employees' immunity by its deci-

---

1. The first alleged defamation stemmed from a letter Larsen wrote to the AFGE explaining his decision on five of Saul's grievances. Saul alleges that this letter defamed him, in part through its use of the word "[s]ubterfuge."

 The second alleged defamation involved Larsen's disclosures to a congressional aide that Saul had been the subject of "production actions" to improve his performance, had filed 16 grievances, and had been refused access by two SSA personnel libraries. Larsen made these disclosures during a phone conversation he initiated after learning that Saul had written to the aide's Congressman complaining about the SSA's union policies.

2. Saul alleged that the opening of mail by St. Louis and the allegedly defamatory communications by Larsen amounted to intentional and negligent inflictions of emotional distress. His complaint also alleged that St. Louis tortiously inflicted him with emotional distress by prohibiting him from sitting at his desk before 8:00 a.m. and from coming to work on weekends.

3. In *Barr*, the Supreme Court held that a federal official was absolutely immune from defamation liability for public statements that were both discretionary and "within the outer perimeter" of the official's duties. 360 U.S. at 574–75, 79 S.Ct. at 1341. The circuits eventually split over the proper interpretation of *Barr*. Some held that federal employees had absolute tort immunity for all actions within the scope of their employments, while others recognized immunity only for discretionary actions within the scope of employment. *See Westfall v. Erwin*, 484 U.S. 292, 294–95 & n. 2, 298 n. 4, 108 S.Ct. 580, 583 & n. 2, 584 n. 4, 98 L.Ed.2d 619 (1988).

sions in *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), and *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). On Saul's petition for rehearing we vacated our memorandum, reversed the grant of summary judgment and remanded for the district court's reconsideration of the immunity issue in light of *Westfall* and *Forrester. Saul v. Larsen,* 847 F.2d 573, 576 (9th Cir.1988) (*Saul I*).

While this case was pending on remand, Congress responded to *Westfall* by enacting the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (*Westfall* Act). The *Westfall* Act amended the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., to protect federal employees from personal liability. *Westfall* Act § 2(b). In tort actions against federal employees, the act required substituting the United States as sole defendant if the Attorney General certified that the defendant employee had acted within the scope of employment. *Id.* § 6 (now codified at 28 U.S.C. § 2679(d)).[4] A United States Attorney certified that Larsen and St. Louis had acted within the scope of their employments.

At issue now are several rulings by the district court on remand. First, following the *Westfall* Act certification, the district court granted the defendants' motion to substitute the United States as the sole defendant of the common law tort claims. Saul contests this substitution order.

Second, the district court granted partial summary judgment dismissing Saul's constitutional tort claim. It found this claim precluded by the special factor of federal employment. Saul disputes this finding.

The United States moved for summary judgment on the common law tort claims. Saul opposed this motion. He sought to amend his complaint concerning the opening of mail to seek both injunctive relief and class relief on behalf of all SSA employees.

Judge McGovern denied Saul leave to amend and entered summary judgment dismissing his common law tort claims. He found that Saul had failed to exhaust the administrative claim requirements of the FTCA. *See* 28 U.S.C. §§ 2672, 2675(a). He also found that the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), preempted Saul's common law tort claims, depriving the court of subject matter jurisdiction. Saul's third and fourth arguments on appeal challenge the denial of leave to amend and the summary dismissal of his common law tort claims.

## DISCUSSION

Only three legal issues require our resolution. First, we must decide whether Saul's federal employment status precludes him from bringing a constitutional tort action to challenge his supervisor's work-related conduct. Second, we must determine whether the Civil Service Reform Act (CSRA) preempts Saul's common law tort claims. Third, we must consider whether the district court erred in denying Saul leave to amend.

 Because Saul appeals from grants of summary judgment, our review is de novo. *See Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir. 1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must view both the facts and the inferences to be drawn from them in the light most favorable to Saul, the nonmoving party. We consider whether genuine issues of material fact preclude summary judgment, and whether the district court correctly applied the substantive law. *See Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

The CSRA is the bedrock of our analysis, for we conclude that it precludes Saul's *Bivens* claim and preempts his state tort claims. We begin by examining the CSRA.

---

**4.** The Attorney General has delegated the authority to make *Westfall* Act certifications to the United States Attorneys. 28 C.F.R. § 15.3 (1989).

## I

### THE CIVIL SERVICE REFORM ACT OF 1978

Congress enacted the CSRA to replace "an outdated patchwork of statutes and rules built up over almost a century." S.Rep. No. 969, 95th Cong., 2d Sess. 3, 53 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2725 (Senate Report).[5] The goal was "a single unified personnel policy which [takes] into account the requirements of all the various laws and goals governing Federal personnel management." *Id.* at 2775. The Act "replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988).

Two of the CSRA's several appeal mechanisms are relevant here. The act permits federal employees to challenge "prohibited personnel practices" by their supervisors. *See* 5 U.S.C. § 2302. It also requires that any collective bargaining agreement covering federal employees contain a grievance procedure that culminates in binding arbitration. *Id.* § 7121. The United States argues that Saul could have challenged the actions of Larsen and St. Louis through either of these CSRA appeal procedures.

### A

#### Prohibited Personnel Practices

The "prohibited personnel practices" of the CSRA include taking "personnel action[s]" violative of its merit system principles. 5 U.S.C. § 2302(b)(11). The merit system principles include treating employees fairly and equitably, "with proper regard for their privacy and constitutional rights," *id.* § 2301(b)(2), as well as protecting employees against arbitrary action and personal favoritism. *Id.* § 2301(b)(8)(A).

The Act offers an administrative remedy to federal employees who allege prohibited personnel practices.[6] The Office of Special Counsel (OSC) must receive allegations of prohibited personnel practices and perform any necessary investigation. CSRA § 202(a) (formerly 5 U.S.C. § 1206(a)(1)), *repealed in part by* Whistleblower Protection Act of 1989 § 3(a)(8), Pub.L. No. 101–12 § 3(a)(8), 103 Stat. 16, 18. That office must report back to the person who alleged the prohibited practice. *Id.* (formerly 5 U.S.C. § 1206(a)(2)). When the OSC has reasonable grounds to believe that a prohibited personnel practice has occurred, it may petition the Merit System Protection Board (MSPB) to stay the personnel action, *id.* (formerly 5 U.S.C. § 1208), or to correct the prohibited personnel practice. *Id.* (formerly 5 U.S.C. § 1206(c)(1)(B)). It may even seek disciplinary action against the employee who committed the prohibited practice. *Id.* (formerly 5 U.S.C. § 1206(g)). Saul did not initiate a complaint to the Office of Special Counsel.

The CSRA makes a "personnel action" an element of a prohibited personnel practice. 5 U.S.C. § 2302. It defines "personnel action" as including "disciplinary or corrective action," *id.* § 2302(a)(2)(A)(iii), but it provides no definitions for these latter terms. Saul argues that he could not have challenged the opening of his mail under the procedures for prohibited personnel practices, because the definition of "personnel action" encompasses only actions bearing some relationship to employees' pay.

---

5. Herein, our citations to the Senate Report will give only the page numbers from United States Code Congressional and Administrative News (USCCAN). We will cite the House Conference Report on the CSRA, H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 128 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2860, in the same fashion and will refer to it as the "House Conf. Report."

6. This remedy was refined by the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16, which strengthened employee protections against prohibited personnel practices. We discuss the CSRA's original, unamended remedy, because it was in effect when the events underlying Saul's suit occurred. The OSC appeal process remains basically as described in the text.

We reject this cramped construction of "personnel action." The CSRA's legislative history indicates that Congress rejected a pay-relatedness requirement. The House Conference Report states that "a personnel action must be significant, but it need not be expected to result in a reduction in pay or grade." House Conf. Report at 2863 (also indicates that some reassignments that do not affect pay are "personnel actions"; others are not). Congress did expect "prohibited personnel practices" to cover supervisors' violations of employees' constitutional and privacy rights. *See id.* at 2865.

■ The term "corrective action" in section 2302 can be read broadly enough to encompass the mail opening before us.[7] In her affidavit, St. Louis said that Saul's constitutional tort claim pertains to the SSA's mail-handling policies. While Saul accused her of abusing the mail policy, he raises no genuine factual issue about whether such a policy existed.

■ An unconstitutional personnel action violates merit principles. *See* 5 U.S.C. § 2301(b)(2). The prohibited personnel practices include taking any personnel action that "violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in section 2301." *Id.* § 2302(b)(11). If the opening of Saul's mail was a "personnel action" by virtue of being "corrective action," then his allegation of its unconstitutionality constitutes a colorable claim that a prohibited personnel practice occurred.

The plain meaning of "corrective action" also encompasses Saul's defamation claims against Larsen. The allegedly defamatory letter responded to Saul's grievance and Saul asserts it was placed in his personnel file. The alleged oral defamations of Saul occurred during a phone call by Larsen to a congressional aide in which Larsen offered the SSA's position on issues Saul had raised in a letter to the aide's Congressman. If either the letter or the statements to the aide were false or defamatory, they would violate merit principles and would be prohibited personnel practices.[8]

■ Saul's final complaint is that St. Louis tortiously inflicted emotional distress upon him by prohibiting him from sitting at his desk before 8:00 a.m. and from coming to work on weekends. He raises no genuine factual issue concerning St. Louis' defense that these orders were imposed to avoid unauthorized overtime work. The restrictions are further examples of "corrective" actions that would violate merit principles if unjustly imposed.

## B
### Grievances Under Collective Bargaining Agreements

■ The CSRA requires any collective bargaining agreement covering federal employees to contain a grievance procedure. 5 U.S.C. § 7121. The statute defines a "grievance" as "any complaint ... by any employee concerning any matter relating to the employment of the employee." *Id.* § 7103(a)(9). A grievance procedure's scope is generally negotiable, except for a few subjects not relevant here. *Id.* § 7121(a)(2), (c).

The grievance procedure in Saul's collective bargaining agreement covered "any

7. *Cf. Spagnola v. Mathis,* 859 F.2d 223, 225 n. 1 (D.C.Cir.1988) (en banc) (per curiam) (noting that Congress broadly defined "prohibited personnel practices"); *Carducci v. Regan,* 714 F.2d 171, 174 n. 3 (D.C.Cir.1983) (Scalia, J.) ("the types of personnel action which can constitute grounds for a prohibited personnel practice are extremely broad, if not exhaustive" (emphasis omitted)). *But see Bush v. Lucas,* 462 U.S. 367, 385 n. 28, 103 S.Ct. 2404, 2415 n. 28, 76 L.Ed.2d 648 (1983) (dictum indicating that warrantless searches would not be "personnel actions" covered by section 2302) (discussed *infra* at II. & n. 19).

8. *See* 5 U.S.C. §§ 2301(b)(8)(A) (merit principles require protecting federal employees against arbitrary action and personal favoritism), 2302(b)(11). We also note that if Saul considered Larsen's statements reprisals for his attempt to expose waste at the SSA, he might also be entitled to the CSRA's whistleblower protections. *See* 5 U.S.C. § 2302(b)(8)(A)(ii). These protections were strengthened by the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16. *See generally Rivera v. United States,* 924 F.2d 948, 952–54 (9th Cir.1991).

complaint ... by an employee(s) concerning any matter relating to the employment of the employee." *See* National Agreement Between Social Security Administration and AFGE (AFL–CIO) Art. 24, § 2 (effective June 11, 1982) (SSA–AFGE Agreement). It excluded only the statutorily-excepted topics. *Compare id. with* 5 U.S.C. § 7121(c). On its face, this language encompassed Saul's claims against Larsen and St. Louis.[9]

Other provisions of Saul's collective bargaining agreement echoed the CSRA's requirement of fair and equitable treatment in all aspects of personnel management, "with proper regard and protection of their privacy and constitutional rights." SSA–AFGE Agreement Art. 3, § 2A. The agreement also provided whistleblower protections and protected employees from "restraint, interference, coercion, discrimination or reprisal ... in seeking adjustment of grievances." *Id.* Art. 3, § 3; Art. 24, § 5. Saul might have based a grievance upon any of these provisions.

### C

We complete our examination of the CSRA by observing that Congress took pains to define the interrelationships between the CSRA's appeal mechanisms. Where a prohibited personnel practice falls within the scope of a negotiated grievance procedure, the CSRA gives the aggrieved employee the option of pursuing either contractual or OSC remedies, but not both. *Id.* § 7121(d); *see also id.* § 7121(a)(1) (contractual grievance procedure is the exclusive remedy, unless grievance involves specifically excepted subjects). The act similarly defines the relationship of unfair labor practices[10] to grievances and to other statutory appeals. *See id.* § 7116(d).

9. Saul's union already had challenged unsuccessfully the mail opening policies of the SSA through a national grievance and arbitration.

10. An agency subject to the CSRA commits an unfair labor practice by "interfer[ing] with, restrain[ing], or coerc[ing] any employee in the exercise ... of any right under [chapter 71 of Title 5 U.S.C.]" 5 U.S.C. § 7116(a)(1). Chapter 71 of the CSRA gives federal employees "the right to form, join, or assist any labor organiza-

These provisions reflect the congressional purposes of avoiding duplication and fragmentation of remedies. *Cf.* House Conf. Report at 2862.

With this foundation in mind, we consider the merits of Saul's appeals.

### II

### CSRA PRECLUSION OF SAUL'S CONSTITUTIONAL TORT CLAIM

Saul complained that St. Louis violated his constitutional rights by seizing and opening personal mail he received at the office. In dismissing this claim on summary judgment, Judge McGovern found that St. Louis was entitled to immunity for the challenged acts. He also held the claim preempted because the CSRA afforded Saul an administrative remedy. Because we find the district court's second reason sufficient to answer to Saul's arguments, we do not reach the issue of immunity.

### A

### Preclusion Where the CSRA Offers *Some* Remedy

Saul patterns his constitutional tort claim upon the cause of action recognized in *Bivens v. Six Unknown Named Agents of the Fed. Narcotics Bureau,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Court held that federal officers who acted under color of law were liable for damages caused by their violation of the plaintiff's Fourth Amendment rights. 403 U.S. at 389, 397, 91 S.Ct. at 2001, 2005. Finding "no special factors counselling hesitation in the absence of affirmative action by Congress," the Court applied the rule that "where legal rights have been invaded, and a federal statute provides for a

tion." *Id.* § 7102. Saul alleged that he was the only employee whose mail was opened by St. Louis, which he attributed to ill will borne him by her. He has not charged her with an unfair labor practice. If he thought that the personal animosity he alleges arose from his activity as a union representative, he could have lodged such a charge with the General Counsel of the Federal Labor Relations Authority (FLRA). *See* 5 U.S.C. § 7118.

general right to sue for such invasion, courts may use any available remedy to make good the wrong done." *Id.* at 396, 91 S.Ct. at 2004 (internal quotations and citation omitted).

Since *Bivens*, the Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 2466, 101 L.Ed.2d 370 (1988). The Court's analyses in *Chilicky* and in its predecessor, *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), are particularly instructive as to whether a court may entertain Saul's *Bivens* claim.

The plaintiff in *Bush* was a federal employee who had publicly criticized his employing agency. He alleged that his supervisors violated his First Amendment rights by demoting him. 462 U.S. at 369–71, 103 S.Ct. at 2406–08. Through administrative channels, Bush won retroactive restoration to his position and $30,000 in backpay. *Id.* at 371, 103 S.Ct. at 2407. Nonetheless he sought to maintain a *Bivens* action against his supervisors. *Id.*

To facilitate its analysis, the Supreme Court assumed both that Bush's First Amendment rights had been violated and that the civil services remedies available to him were less effective than a damages remedy. 462 U.S. at 372 & nn. 8–9, 103 S.Ct. at 2408 & nn. 8–9. Yet the Court distinguished Bush's· problem from the problem presented in *Bivens:*

> The question [in *Bush* ] is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system [for the federal civil service] that has

been constructed with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation.

*Id.* at 388, 103 S.Ct. at 2416–17. The Court answered this question in the negative, stating that "[b]ecause [Bush's] claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, ... it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." 462 U.S. at 368, 103 S.Ct. at 2406. It noted that Congress was better suited to decide if the new legal liability sought by Bush would serve the public interest. *Id.* at 390, 103 S.Ct. at 2417.

The civil service system afforded Bush a relatively complete remedy. This fact caused uncertainty, after *Bush*, about the scope of CSRA preclusion.[11] Courts questioned "[w]hether the Court intended *Bush* to bar damages actions for those employees ... for whom the CSRA remedies are not so complete." *Spagnola v. Mathis*, 859 F.2d 223, 226 (D.C.Cir.1988).

Five years after *Bush*, the Court clarified its position. The plaintiffs in *Schweiker v. Chilicky*, 487 U.S. 412, 417–19, 108 S.Ct. 2460, 2464–65, 101 L.Ed.2d 370 (1988), brought a *Bivens* action alleging that federal and state officials violated their due process rights by wrongfully terminating their social security disability benefits. After reviewing the Social Security Act's elaborate remedial structure, the Court concluded this structure made *Chilicky* indistinguishable from *Bush*. *See id.* 487

---

11. Bush was demoted in 1975, before enactment of the CSRA. *See* 462 U.S. at 369–70, 103 S.Ct. at 2406–07. He obtained restoration to his position and backpay by using pre-CSRA civil service remedies. *See id.* at 370–71, 386–88, 103 S.Ct. at 2407–08, 2415–17. By the time his case reached the Supreme Court, however, the CSRA was four years old. In its thorough review of civil service remedies, the Court repeatedly discussed the remedial system instituted by the CSRA. *Id.* at 385–88 & nn. 25, 28, 30, 32–33, 35, 103 S.Ct. at 2415–16 & nn. 25, 28, 30, 32–33, 35. It then couched the question before it in terms

of "the comprehensive nature of the remedies *currently* available." *Id.* at 388, 103 S.Ct. at 2416 (emphasis added). The analysis of *Bush* thus applies to the CSRA.

The two concurring justices in *Bush* emphasized the completeness of the remedies available. They found "nothing in today's decision to foreclose a federal employee from pursuing a *Bivens* remedy where his injury is not attributable to personnel actions which may be remedied under the federal statutory scheme." 462 U.S. at 390–91, 103 S.Ct. at 2418 (Marshall, J., concurring).

U.S. at 425, 108 S.Ct. at 2468. It observed that Congress had considered and addressed the problem of wrongful termination of disability benefits. *Id.* at 425–26, 108 S.Ct. at 2468–69. It held that the Social Security Act's comprehensive remedial scheme was a special factor counseling hesitation to permit a *Bivens* action. *Id.* 487 U.S. at 429, 108 S.Ct. at 2470.

*Chilicky* teaches that the key consideration is not whether a complete statutory remedy exists for the constitutional violation charged. Rather,

> [w]hen the *design* of a government program suggests that Congress has provided mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* 487 U.S. at 423, 108 S.Ct. at 2467 (emphasis added). The *Chilicky* Court suggested that Congress had deliberately elected not to include "complete relief" for constitutional violations in the comprehensive acts covering federal employment and social security. *See id.* at 424–25, 108 S.Ct. at 2468–69. It viewed *Bush* as resting on the premise that Congress was better positioned to decide whether a new damages remedy would serve the public interest. *Id.* 487 U.S. at 426–27, 108 S.Ct. at 2469–70.

No Supreme Court opinion holds squarely that the CSRA always prevents federal employees from bringing *Bivens* actions to right job-related wrongs. One justice has implied that in at least some situations, a federal employee could maintain a *Bivens*

action despite the CSRA. *See United States v. Fausto*, 484 U.S. 439, 455, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988) (Blackmun, J., concurring).[12]

Before *Chilicky*, this court permitted a *Bivens* action by a federal employee who was demoted during a promotional probationary period, where the demotion allegedly violated the employee's constitutional rights of privacy and free speech. *See Kotarski v. Cooper*, 799 F.2d 1342, 1344–45 (9th Cir.1986) (*Kotarski I*), *vacated and remanded*, 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988). In holding that the doctrine of *Bush v. Lucas* did not preclude Kotarski's *Bivens* claim, we emphasized the absence of "meaningful" and "adequate" remedies in the CSRA for probationary employees. *Id.* 487 U.S. at 1346–49.

The Supreme Court vacated and remanded *Kotarski I* for our reconsideration in light of *Chilicky*. 487 U.S. 1212, 108 S.Ct. 2861. On remand, we shifted our inquiry from evaluating whether the CSRA provided Kotarski with meaningful and adequate remedies to deciding if the CSRA's omission of a damages remedy for demoted probationary employees was "inadvertent." *See Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir.1989) (*Kotarski II*). Because the CSRA allowed employees to appeal *some* adverse personnel actions, we found no inadvertence. We held that "no *Bivens* action can be implied for Kotarski in light of *Chilicky.*" *Id.*[13]

---

**12.** In *Fausto,* the Court held that the CSRA precluded a "nonpreference eligible employee" in the federal "excepted service" from using the Back Pay Act to obtain judicial review of his suspension. 484 U.S. at 447, 108 S.Ct. at 673. While Fausto could have had a suit about his suspension before enactment of the CSRA, the act gave no remedy to employees with Fausto's status. The Court thought this omission reflected a deliberate congressional balancing of employee and government interests. It avoided undermining the CSRA's carefully balanced structure by finding CSRA preclusion. *Id.* at 448–51, 108 S.Ct. at 673–75.

Justice Blackmun concurred with the five-member *Fausto* majority, but added the caveat that he did not find its opinion inconsistent with the Court's established aversion to recognizing implied repeals. He thought this aversion applied with equal force to statutorily and judicially created remedies. He cited *Bivens* actions as an example of a judicially created remedy that should not be lightly repealed by implication. *Id.* 484 U.S. at 455, 108 S.Ct. at 677.

**13.** *See also Karamanos v. Egger,* 882 F.2d 447, 451–53 (9th Cir.1989) (because the CSRA permitted some appeal of alleged misclassifications, we could not infer an inadvertent failure to provide complete relief; CSRA thus constituted a "special factor" precluding a *Bivens* action); *Feit v. Ward,* 886 F.2d 848, 854 (7th Cir.1989) (agreeing with *Kotarski II* that, after *Chilicky,* courts need not make any "foray into the meaningfulness of a federal employee's remedies within the CSRA" before applying the special factors doctrine); *cf. Rivera v. United States,* 924 F.2d 948, 950–51 (9th Cir.1991) (no *Bivens*

■ Nine other courts of appeals have concluded that the CSRA precludes a federal employee from using a constitutional tort theory to adjudicate at least some employment-related disputes. Four circuits reached this conclusion before *Chilicky*.[14] *Chilicky* altered the views of two circuits besides this one, causing them to recognize CSRA preclusion of *Bivens* remedies.[15] Following *Chilicky* and *Fausto*, three more circuits have found that the CSRA precludes *Bivens* remedies.[16]

Citing *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328 (9th Cir.1987), Saul urges that his *Bivens* claims are actionable because the CSRA does not apply to "nonemployment torts committed against federal employees which are not related to pay."

We reject the suggestion that a federal employee may bring a constitutional tort claim against his supervisors as long as he limits his challenge to actions unrelated to his pay.[17] The text of the CSRA, the case law interpreting it, and common sense all counsel against adoption of this view.

The text of the CSRA shows that Congress did not inadvertently omit a damages remedy for Saul. As we have explained, the statute offers at least two means of redressing the constitutional injury he contends St. Louis inflicted. He could either have requested the OSC to investigate the mail opening as a prohibited personnel practice, or have filed a grievance under his

remedy should be implied against individual supervisors where Congress designed CSRA to provide remedies for constitutional violations).

**14.** *See Weatherford v. Dole*, 763 F.2d 392, 393–94 (10th Cir.1985) (no *Bivens* remedy for federal employee who contested in-grade reassignment without change in pay; the absence of CSRA remedies for some nonmajor personnel actions signifies that "[c]ertain agency personnel decisions are simply not subject to judicial review"); *Pinar v. Dole*, 747 F.2d 899, 909 (4th Cir.1984) (no *Bivens* action to challenge a letter of reprimand, a two-day suspension, and the termination of a temporary promotion where the CSRA afforded the plaintiff a constitutionally adequate remedy), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Hallock v. Moses*, 731 F.2d 754, 757 (11th Cir.1984) (no constitutional tort action permitted against supervisors who allegedly retaliated against plaintiff for exercising her First Amendment rights); *Braun v. United States*, 707 F.2d 922, 926 (6th Cir.1983) (special factor of federal employment precluded recognition of a *Bivens* action for an employee who alleged retaliatory denials of a promotion and an in-grade pay raise, as well as negative performance evaluations); *Broadway v. Block*, 694 F.2d 979, 985 (5th Cir.1982) (federal employee who was reassigned without change in grade or pay could not bring *Bivens* action).

**15.** *See McIntosh v. Turner*, 861 F.2d 524, 525 (8th Cir.1988) (on remand from the Supreme Court for reconsideration in light of *Chilicky*, Eighth Circuit reversed its earlier recognition of a constitutional tort action by a federal employee who alleged unfair and biased promotion decisions); *Spagnola v. Mathis*, 859 F.2d 223, 230 (D.C.Cir.1988) (en banc) (per curiam) (unanimous opinion) (interpreting *Chilicky* as barring *Bivens* actions by federal employees

who challenge personnel actions on constitutional grounds).

**16.** *See Lombardi v. Small Business Admin.*, 889 F.2d 959, 961 (10th Cir.1989); *Feit v. Ward*, 886 F.2d 848, 854–56 (7th Cir.1989); *Volk v. Hobson*, 866 F.2d 1398, 1403–04 (Fed.Cir.), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989).

*Feit* typifies our sister circuits' views. In *Feit*, the Seventh Circuit found that the comprehensiveness of the CSRA's administrative system, coupled with the expertise and authority of Congress in the field of federal employment, constitute special factors counseling hesitation to imply a *Bivens* remedy. 886 F.2d at 854–55 & n. 8. The court in *Feit* noted that the "prohibited personnel practices" redressable under the CSRA include violations of federal employees' constitutional rights. It found that the act's omission of a damages remedy for constitutional violations was not inadvertent. *Id.* at 855.

**17.** Saul's reliance on *Schowengerdt* is misplaced. In *Schowengerdt*, another panel of this court held that a federal employee could bring a *Bivens* action to challenge a warrantless search by his supervisors because the CSRA offered no mechanism to vindicate his Fourth Amendment rights. *Id.* at 1339. But this holding antedated both *Chilicky* and *Kotarski I*. Like *Kotarski I*, *Schowengerdt* suffers from its emphasis on whether the CSRA offered adequate remedies. *See* 823 F.2d at 1339 (reasoning that Schowengerdt could seek a *Bivens* remedy "if the constitutional violations he claims cannot be *adequately* addressed under the [CSRA]" (emphasis added)); *see also id.* at 1333 n. 4. *Chilicky* eliminated any need to make a case-by-case analysis of whether adequate administrative remedies are available to the prospective *Bivens* plaintiff. *Spagnola*, 859 F.2d at 228.

collective bargaining agreement.[18]

Case law interpreting the CSRA further supports rejection of Saul's pay-relatedness distinction. The Supreme Court has not used pay-relatedness as the determinant of whether federal employees may bring *Bivens* actions against their supervisors. In *Bush*, the Court deferred to Congress' superior ability to evaluate the impact of *Bivens* remedies upon the federal civil service. 462 U.S. at 389, 103 S.Ct. at 2417. The relationship of Bush's injury to his pay played no apparent role in the Court's analysis.

Common sense also exposes the folly of making CSRA preclusion of a federal employee's *Bivens* claim turn on that claim's relationship to pay. It would turn the CSRA on its head to hold that the statute prohibited immediate lawsuits in pay-related cases, but did not prohibit such suits in nonpay-related cases. The structure of the CSRA established the "primacy of the MSPB for administrative resolution of disputes over adverse personnel action, ... and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review...." *Fausto*, 484 U.S. at 449, 108 S.Ct. at 674 (citations omitted). The *Fausto* Court found that it would undermine this structure to permit nonpreference eligible employees in the excepted service to sue over their dismissals. *Id.* at 451, 108 S.Ct. at 675. It would also undermine this structure to require employees to redress pay-related claims through the CSRA's administrative procedures, while permitting their coworkers with nonpay-related claims to bypass the act's administrative procedures, sue in any federal district court, and appeal to any geographically appropriate circuit court.

## B
### Preclusion Where the CSRA Offers No Remedy

Saul seizes upon dictum in a footnote to *Bush* that suggests a federal employee subjected to a warrantless search by a supervisor would not have an OSC appeal because the search would not meet the CSRA's definition of a "personnel action." *See* 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28. That footnote cannot bear the weight of Saul's argument. We do not think the footnote was meant to decide whether every allegation that a supervisor has subjected a federal employee to a warrantless search is barred from appeal under the CSRA. Read in context, the footnote indicates only that CSRA remedies, while comprehensive, are not infinitely so.[19]

Saul points out that in *Schowengerdt*, this court applied *Bush*'s footnote 28 very literally. It was cited as our authority for stating that "warrantless searches are not 'personnel actions' within the statutory scheme." *See* 823 F.2d at 1339. In keeping with our pre-*Chilicky* analysis, we then reasoned that "Congress has not acted to regulate the aspect of government/employee relations at issue ... and, thus, the 'special factor' present in *Bush* is wholly absent here." *Id.*

While *Chilicky* undermines this latter reasoning, *see supra* nn. 13, 17, we do not think that the *Bush* language requires the literal application given it in the *Schowengerdt* opinion. A question not reached in the latter opinion is this: does the CSRA preclude even those *Bivens* claims for which it prescribes no alternative remedies?

In *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir.1984) (citations omitted), we said that the comprehensiveness of the CSRA's remedies evinced "a clear congressional intent to permit federal court review as provided in the CSRA or not at all." This statement suggests that CSRA preclusion of *Bivens* claims applies even absent any CSRA remedy. But *Veit* concerned the denial of a merit pay increase, which may be challenged as a prohibited personnel practice.

---

18. As indicated in footnote 10 herein, an unfair labor practice charge might also have been possible.

19. Footnote 28 does not even mention the two other avenues of CSRA appeal that Saul might have used: a grievance under Saul's collective bargaining agreement, and an unfair labor practice charge. *See supra* at I.B.–C.

*See id.* at 511.[20] The *Veit* court's suggestion that CSRA preclusion could apply even absent a CSRA remedy is only dictum.

Cases from two other circuits indicate that the preclusive effect of the CSRA sweeps beyond the contours of its remedies. *See Lombardi v. Small Business Admin.,* 889 F.2d 959, 961 (10th Cir.1989); *Volk v. Hobson,* 866 F.2d 1398, 1403–04 (Fed.Cir.), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989). In *Volk,* the Federal Circuit noted that the remedies of the CSRA were

> provided by Congress as a package. Whether or not an employee has access to all of the procedures and remedies of the CSRA, or, as here, fails to fully avail herself of those she has, it illustrates the logic inherent in the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress. It is far better positioned to set the policy and adjust the system than judges confronting ad hoc situations and trying to fill perceived gaps in the program by allowing employees to prosecute *Bivens* suits against each other.

866 F.2d at 1403.

We agree with the *Volk* court that the CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy. The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights. In the area of federal employment, Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce.

In summary, we hold that the CSRA is a special factor counseling against recognition of a *Bivens* remedy for Saul. We affirm the dismissal of his *Bivens* claim.

## III

## CSRA PREEMPTION OF SAUL'S COMMON LAW TORT CLAIMS

Saul's complaint charged the torts of intentional and negligent infliction of emotional distress, defamation, and invasion of privacy. The district court gave two reasons for dismissing these claims on summary judgment. First, Judge McGovern found that after substitution of the United States, Saul was required to exhaust his administrative remedies under the FTCA. Second, he held that the CSRA barred Saul's claims. We affirm on the second ground and do not discuss the first.[21]

The question whether the CSRA preempts a federal employee's common law tort claims against his supervisors, where these claims stem from the working relationship but do not affect the employee's pay, is one of first impression in this circuit. It appears to be a novel question in the federal courts generally.

"Preemption analysis always starts with the presumption that Congress did not intend to displace state law." *California ex rel. State Water Resources Bd. v. Federal Energy Regulatory Comm'n,* 877 F.2d 743, 746 (9th Cir.1989), *aff'd,* —— U.S. ——, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990). The intention of Congress serves as the ultimate touchstone. *California*

---

**20.** Apparently neither party in *Veit* asserted that an OSC complaint could have been lodged. *See* 746 F.2d at 511. The *Veit* court stated that "the record would not support ... a contention [of a prohibited personnel practice] in any event." *Id.* This comment is dictum, because *Veit* did not require resolution of this issue. Our broad interpretation of "corrective action" would clearly encompass the denial of a merit pay increase, making this appealable via OSC complaint. *See supra* at I.A.

**21.** Our analysis assumes, *arguendo,* that the *Westfall* Act does not prevent Saul from holding his supervisors individually liable for their common law torts. Because of this assumption, we do not decide whether the substitution order was proper. We also have no occasion to evaluate whether our decision in *Smith v. Marshall,* 885 F.2d 650 (9th Cir.1989), *cert. granted sub nom. United States v. Smith,* —— U.S. ——, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990), precludes a *Westfall* Act substitution where the substitution would not deprive the plaintiff of all remedies.

*Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 284, 107 S.Ct. 683, 691, 93 L.Ed.2d 613 (1987).

Federal law may preempt state law in three different ways. *Id.* at 280–81, 107 S.Ct. at 689–90. First, Congress may preempt state law by an express statement. *Id.* at 280, 107 S.Ct. at 689. Second, the Supremacy Clause mandates preemption where state law actually conflicts with federal law. *See id.* at 280–81, 107 S.Ct. at 689–90. Third, we may infer that Congress preempted state law where the scheme of federal regulation is "sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *Id.* (internal quotations and citation omitted). Because we find no express preemption of state tort law in the text of the CSRA, *cf. Broughton v. Courtney,* 861 F.2d 639, 641–44 (11th Cir.1988), we discuss only the last two preemption possibilities.

### A

### Preemption Caused by Actual State–Federal Conflict

■■■■ A conflict between state and federal laws can occur either because it is physically impossible to comply with both, or because "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Guerra,* 479 U.S. at 281, 107 S.Ct. at 689 (internal quotations and citations omitted). Here, physical impossibility is not the issue. The issue is rather whether permitting state tort claims like Saul's would frustrate achievement of the congressional objectives embodied in the CSRA.

Saul points out correctly that each time we have held the CSRA preempted a federal employee's common law tort remedies, the employee had suffered some pay-related injury. *See Rivera v. United States,* 924 F.2d 948, 951–52 (9th Cir.1991); *David v. United States,* 820 F.2d 1038, 1043 (9th Cir.1987) (CSRA preempted discharged employee's claim for intentional infliction of emotional distress); *Lehman v. Morrissey,* 779 F.2d 526 (9th Cir.1985) (per curiam) (proper to dismiss claim for intentional infliction of emotional distress by employee who resigned after "directed reassignment"; CSRA was her sole recourse). From this fact, Saul reasons that the CSRA preempts only those tort claims that bear some relationship to a federal employee's pay.

Saul focuses upon the wrong fact. CSRA preemption of a federal employee's state tort claims does not depend on whether the claims bear some nexus to the employee's pay. Rather, to the extent that preemption analysis seeks to avoid actual conflict between state and federal laws, the controlling factor must be whether the employee could challenge the action through the CSRA.

In *Broughton v. Courtney,* 861 F.2d 639, 644 (11th Cir.1988), the Eleventh Circuit stated that "where state common law claims are included in the personnel actions that employees can challenge under the CSRA, those state actions are preempted" (citing *David* and *Lehman*). It reasoned that in such situations, the state claim would interfere with the congressional objective of making the CSRA an *"exclusive"* forum for challenging federal personnel actions. *See id.* at 643–44 (emphasis added). To prevent actual state-federal conflict, the *Broughton* court held that the CSRA preempted the plaintiff's state law claims for conspiracy and tortious interference with employment. *Id.*

As was true in *Broughton,* at least some of Saul's tort claims were subject to administrative appeal under the CSRA. He could have redressed the alleged defamations and inflictions of emotional distress either by initiating an OSC investigation of prohibited personnel practices or by filing a grievance under his collective bargaining agreement.

### B

### Preemption By Federal Occupation of the Field

■■■ As already indicated, the *Schowengerdt* court's literal application of footnote 28 from *Bush* may mean that the mailopening actions of St. Louis fall outside the

CSRA. *See supra* at II.B. Besides basing his *Bivens* claim on these actions, Saul complained that they tortiously invaded his privacy. We consider whether Congress, in enacting the CSRA, intended to leave room for such a tort claim.

Both the CSRA and its legislative history show that Congress did not intend that state tort law operate within the interstices of the act. In the legislative history, Congress explicitly recognized that not every work-related complaint by a federal employee would be appealable, let alone appealable to the courts.[22] The act itself carefully defines the interrelationships between its appeal mechanisms. *See supra* at I.C. It "fully protects the existing rights of employees to trial de novo under title VII of the Civil Rights Act of 1964." House Conf.Report at 2874–75 (which continues by cataloging the eight different times when an employee may sue to redress discrimination). Yet the CSRA fails

even to mention state tort remedies. We infer that Congress did not mention any such remedies because it left no room for them. *Accord Rivera v. United States*, 924 F.2d 948, 951–52 (9th Cir.1991).

Our conclusion that Congress intended to oust state tort law from the realm of federal employment is consistent with cases defining the CSRA's relationship to other federal remedies. Federal courts have used the act's comprehensive and exclusive nature as a reason for holding that it precludes suit under a variety of other federal statutes.[23] A similar analysis has supported holdings that the CSRA precludes implying rights of action for federal employees,[24] and that these employees may not bypass the CSRA to sue for breach of the duty of fair representation.[25] To like effect are the many cases holding that the CSRA's comprehensive remedial scheme constitutes a special factor precluding fed-

**22.** *E.g.*, House Conf. Report at 2862 (FBI is excluded from the coverage of most prohibited personnel practices); Senate Report at 2800, 2802 (career executives in the senior executive service have "no appeal rights" if removed during the first year, no matter what the quality of the executive's performance, nor can they appeal their performance ratings; *see also id.* at 2812 (decisions about merit pay for employees in GS–13 through GS–15 "shall not be appealable outside the agency"); House Conf. Report at 2887 (the FLRA may review an arbitrator's grievance award on narrow grounds, but no further judicial review is permitted).

**23.** *E.g.*, *Fausto*, 484 U.S. at 455, 108 S.Ct. at 677 (CSRA precludes review of claim brought by suspended federal employee under the Tucker and Back Pay Acts); *Carter v. Gibbs*, 909 F.2d 1452, 1454–55 (Fed.Cir.) (in banc) (CRSA precludes suit for overtime pay under Fair Labor Standards Act where the issue could be grieved under CSRA-sanctioned collective bargaining agreement), *cert. denied*, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990); *Stephens v. Department of Health and Human Servs.*, 901 F.2d 1571, 1576 (11th Cir.) (relief under the Administrative Procedure Act (APA) precluded because "the comprehensive nature of the ... CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA, or not at all") (internal quotations omitted) (quoting our opinion in *Veit*, 746 F.2d at 511), *cert. denied*, —— U.S. ——, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990); *Ryon v. O'Neill*, 894 F.2d 199, 200 (6th Cir.1990) (CSRA precludes direct appeal to federal courts under APA and Manda-

mus Act); *Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir.1983) (Scalia, J.) (no APA judicial review available for nonconstitutional claims that could be redressed under CSRA; such claims " 'committed to agency discretion by law' " (quoting 5 U.S.C. § 701(a)(2) (1976))).

**24.** *See Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir.1984) (no implied right of action in an area where CSRA provides no remedy); *Ryon*, 894 F.2d at 201; *Broadway v. Block*, 694 F.2d 979, 983–84 (5th Cir.1982) (no implied right of action under the CSRA by which employee could challenge her reassignment without change of grade or pay); *Borrell v. United States Intern. Communications Agency*, 682 F.2d 981, 988 (D.C.Cir. 1982) (CSRA affords terminated probationer no implied right of action).

**25.** *See Tucker v. Defense Mapping Agency*, 607 F.Supp. 1232, 1245 (D.R.I.1985). The *Tucker* plaintiffs sued both their union and their agency, complaining about the temporary shift in their duty hours caused by the renovation of their office. *Id.* at 1233, 1235. The district court found that it lacked subject matter jurisdiction over the employees' claims against their agency because Congress "has adequately evidenced an intention to occupy the field of federal sector labor/management relations." *Id.* at 1241. It found the CSRA "so precise and delicately balanced that the engrafting of ancillary remedies upon the framework of the Act would inevitably create chaos within the federal sector, and sow the seeds of impermissible conflict." *Id.* at 1239.

eral employees from bringing *Bivens* actions. *See supra* at II.A. & nn. 14–16.

We find the failure of Congress to even mention state tort remedies in the CSRA is glaringly significant. We conclude that Congress ignored these remedies because it left no room for them to operate. The CSRA preempts Saul's claim that the opening of his mail violated state law by invading his privacy.

## C

The district court held correctly that it lacked subject matter jurisdiction over Saul's common law tort claims. Insofar as the CSRA offered Saul remedies, his state tort claims must be preempted to prevent them from conflicting with the remedial system that Congress prescribed for federal employees. Even where the CSRA provided Saul no remedy, preemption of his work-related tort claims is necessary to fulfill congressional intent.

## IV

### DENIAL OF LEAVE TO AMEND

Saul originally requested injunctive relief against the individual defendants. After substitution of the United States, he moved to amend his prayer for relief from the allegedly unconstitutional opening of his mail. He wished to add injunctive relief against the United States and class relief for all SSA employees. He now challenges the district court's denial of leave to amend, pointing out that courts are required to grant such leave freely. *See* Fed.R.Civ.P. 15.

 Once a responsive pleading has been filed, we review a denial of leave to amend for abuse of discretion. *Thomas–Lazear v. FBI*, 851 F.2d 1202, 1206 (9th Cir.1988). A district court does not err in denying leave to amend where the amendment would be futile, *Reddy v. Litton In-*

dus., Inc., 912 F.2d 291, 296 (9th Cir.1990), or where the amended complaint would be subject to dismissal. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir.1989).

 Amending Saul's complaint to seek injunctive relief would be futile. The CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief. *See Lombardi*, 889 F.2d at 961–62. The act provides its own limited form of injunctive relief, by permitting the OSC to seek a stay of a prohibited personnel practice.[26] As the Fourth Circuit noted, "where the personnel actions are so minor in nature and where the available statutory remedies are constitutionally adequate to provide relief, ... Congress intended that judicially-created remedies ... not be made available." *Pinar v. Dole*, 747 F.2d 899, 912 (4th Cir. 1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).[27] The CSRA precludes Saul from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages.

Amending this complaint to seek class relief would also be futile. Saul's class claims would be of the same character as his individual complaint about the opening of mail. Just as the CSRA precludes Saul's individual *Bivens* claim, so would it preclude him from bringing this as a class action.

The district court did not abuse its discretion by denying leave to amend. Neither amendment could overcome the fundamental futility of the claims.

## CONCLUSION

The comprehensive provisions of the Civil Service Reform Act severely limit the ability of federal employees to sue their supervisors. Our study of the CSRA's pre-

---

**26.** *See* 5 U.S.C. § 1214(b)(1) (the current CSRA provision for stays). Originally, the CSRA provided for stays in the former section 1208.

**27.** *Contra Spagnola v. Mathis*, 859 F.2d 223, 228–29 (D.C.Cir.1988) (the D.C. Circuit differs from other circuits by permitting federal employees to vindicate their constitutional rights through suits against their supervisors and employing agencies for *injunctive relief*, but *not for damages*).

clusive and preemptive effects convinces us that the district court properly granted summary judgment for the defendants on both the constitutional and common law tort claims. The court did not err by denying Saul leave to amend his complaint.

AFFIRMED.