61 F.3d 912
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Keyvan NOURAIE, Plaintiff-Appellant,
v.
Gordon R. SULLIVAN, Acting Secretary of the Army, Defendant-Appellee.
 No. 94-16003.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 17, 1995.*
Decided July 20, 1995.
 
 Before: FLETCHER, KOZINSKI and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Keyvan Nouraie appeals pro se the district court's summary judgment in favor of the Secretary of the Army. Nouraie's complaint alleged that the termination of his employment as a Persian language instructor at the Army's Defense Language Institute in Monterey, California ("DLI") violated both his right to due process and the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 * Background
 
 
 4
 Nouraie was hired as a DLI language instructor in February 1989. His temporary appointment, for approximately one year, was to expire on March 5, 1990. He was informed when he was hired that his employment could be terminated on seven days' written notice for any reason and at any time prior to that date.
 
 
 5
 Approximately six weeks after Nouraie began work, his immediate supervisor counseled him about inappropriate behavior with female students. In May 1989, Nouraie attended a training course about prevention of sexual harassment. The following November, several students alleged in written evaluations of Nouraie's performance as an instructor that he sexually harrassed female students. As a result of these reports, the DLI informed Nouraie in writing on December 15, 1989, that his employment would be terminated effective December 29, 1989 based upon his sexual harassment of female students.
 
 
 6
 Nouraie denied the allegations of harassment and asked that the decision be rescinded. Following Nouraie's denial, on December 12, 1989, the DLI suspended Nouraie's termination pending an investigation. The investigator concluded that Nouraie had harassed female students and, and on February 1, 1990, the DLI Commandant terminated Nouraie's employment effective February 2, 1990.
 
 
 7
 Nouraie challenged the termination through the negotiated union grievance procedure, claiming that the charges of harassment were unfounded and that he had not been given adequate notice or opportunity to respond to the allegations. Nouraie lost at each of the four steps of the grievance procedure. The DLI did, however, delete references to sexual harassment from Nouraie's personnel file so that his employment record did not indicate the reason for his termination. On May 15, 1990, the DLI informed Nouraie that his grievance rights had been exhausted.
 
 
 8
 The union requested arbitration, but the parties subsequently learned that temporary, "non-preference eligible excepted service" employees such as Nouraie had no right to arbitration of their grievances. Accordingly, on November 19, 1990, the DLI notified Nouraie that he was not entitled to submit his grievance to arbitration and thus had no further administrative appeal rights.
 
 
 9
 On May 10, 1991, Nouraie contacted an Equal Employment Opportunity ("EEO") counselor and alleged that his termination was the result of discrimination based upon his national origin (Iranian) and gender. As a result of the counselor's review of his personnel file, Nouraie learned 1991 that the DLI had failed to disclose one of the student evaluations, which was favorable to Nouraie. On July 8, 1991, Nouraie filed a formal EEO complaint alleging that the DLI had discriminated against him based upon his national origin and gender by (1) permitting students to make false accusations on student evaluation forms, (2) terminating his employment on the basis of the student evaluations, (3) denying him notice and a fair hearing, and (4) withholding information.
 
 
 10
 The DLI rejected the first two allegations on the ground that Nouraie had elected to challenge his termination through the union grievance procedure. The DLI rejected the third claim, denial of a fair hearing, because it was directed at the union, not the Army. The DLI decided to investigate the fourth claim, withholding of information. The investigator recommended a finding of no discrimination, and the DLI ultimately adopted the recommendation as its final decision. The Army issued a right-to-sue letter on July 21, 1991.
 
 
 11
 On August 20, 1991, Nouraie filed the instant action in the district court, asserting the same four claims. The DLI moved to dismiss or, in the alternative, for summary judgment. The district court concluded that the first two claims were barred by Nouraie's prior election of the grievance procedure to challenge his termination, that the Civil Service Reform Act precluded judicial review of the third claim, and that the fourth claim was not cognizable under Title VII.
 
 II
 Discussion
 
 12
 Nouraie contends the district court erred by granting summary judgment on each of his causes of action. This contention is without merit.
 
 
 13
 We review de novo a district court's grant of summary summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir. 1989), cert. denied, 496 U.S. 937 (1990). The dismissal of a claim under Fed. R. Civ. P. 12(b)(6) and a district court's determination that it lacked subject matter jurisdiction are also reviewed de novo. Id.; see also Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991).
 
 
 14
 The Civil Service Reform Act (CSRA), enacted in 1978 (codified as amended in scattered sections of 5 U.S.C.), provides federal employees with statutory remedies for "prohibited personnel practices" and "adverse actions." "Prohibited personnel practices" include both national origin and gender discrimination as well as improper solicitation of statements about an employee. 5 U.S.C. Sec. 2302(b)(1), (2). "Adverse actions" include termination. 5 U.S.C. Secs. 7501-7504, Secs. 7511-7514. The CSRA substituted a unified, comprehensive system of remedies for a patchwork of employment-related claims that had previously been brought on a variety of jurisdictional grounds. United States v. Fausto, 484 U.S. 439, 444-45 (1988); Saul v. United States, 928 F.2d 829, 833 (9th Cir. 1991); Rivera, 924 F.2d at 951.
 
 
 15
 Despite its comprehensive scope, the CSRA accords varying levels of relief and review for different kinds of injuries suffered by distinct categories of employees. At the time Nouraie's employment was terminated, the CSRA provided very limited remedies to temporary employees in the "excepted service" compared with the relief afforded to "competitive service" or career employees. See 5 U.S.C. Secs. 2102-03 (defining competitive and excepted service); Fausto, 484 U.S. at 441 (explaining differing treatment under the Act); Saul, 928 F.2d at 839. As an employee in the "excepted service," Nouraie was accorded no statutory right under the CSRA to appeal to the federal courts adverse administrative decisions made with regard to the alleged wrongs he suffered as a federal employee.[1] See Fausto, 484 U.S. at 448-50, 455; Saul, 928 F.2d at 840. Therefore, the district court correctly concluded that it lacked jurisdiction to review Nouraie's claims of wrongful termination and denial of a fair hearing. See Secs. 2302, 7511-12; Fausto, 484 U.S. at 448-50, 455; Saul, 928 F.2d at 840.
 
 
 16
 The district court also correctly concluded that it lacked jurisdiction under Title VII to consider Nouraie's discrimination claims. A federal employee who alleges a prohibited personnel practice, including employment discrimination, "must elect to pursue his claim under either a statutory procedure or a union-asssisted grievance procedure, he cannot pursue both avenues, and his election is irrevocable." Vinieratos v. United States Dept. of the Air Force, 939 F.2d 762, 768 (9th Cir. 1991); 5 U.S.C. 7121(d) (1988). By filing a grievance before filing an EEO complaint, Nouraie elected to challenge his termination through the grievance procedure. See Vinieratos at 768-69 (employee cannot pursue both avenues, and election is irrevocable). Nouraie first contacted an EEO counselor fifteen months after his termination, long after he had exhausted the grievance procedure. Accordingly, he is precluded from challenging his termination under Title VII. See id.; 5 U.S.C. Sec. 7121(d). The district court also did not err by dismissing Nouraie's claim that the DLI wrongfully withheld a favorable student evaluation during its investigation. The withholding of information is not a "personnel action" within the meaning of Title VII, see 42 U.S.C. Secs.2000e-2; 2000e-16(a), and is therefore not cognizable as the basis for a Title VII claim.
 
 
 17
 The grant of summary judgment is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 On August 17, 1990, the CSRA was amended to extend judicial review of major adverse actions to employees in the "excepted service." See Pub. L. No. 101-376, Sec. 2(a), 104 Stat. 461 (1990), adding 5 U.S.C. 7511(a)(1)(C) (expanding categories of employees covered under Chapter 75). The 1990 amendment is applicable prospectively to personnel actions that took effect on or after August 17, 1990. See Historical Note to 5 U.S.C. Sec. 7511 (West Supp 1995). Thus, it does not apply to Nouraie's termination, which took effect on February 2, 1990
 Prior to the 1990 amendments, only "preference eligibles" of the "excepted service" (those who had served in the armed forces) were covered by Chapter 75 remedies. Sec. 7511(a)(1)(B); see 5 U.S.C. Sec. 2108(3) (defining "preference eligible"). Other "excepted service" employees had no recourse to Chapter 75 protections even if they suffered major adverse actions. See Fausto, 484 U.S. at 446-47.