**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRETT L. ARRON,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

No. 96-2086
(D. New Mexico)
(D.C. No. CIV 95-0885-M)

-------------------------------------------

BRETT L. ARRON,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA; DEPARTMENT OF HEALTH AND HUMAN SERVICES; PUBLIC HEALTH SERVICE; INDIAN HEALTH SERVICES; NAVAJO INDIAN HEALTH SERVICE; DONNA E. SHALALA, Secretary of the Department of Health and Human Services; TIMOTHY FLEMING; DOUGLAS PETER; GARY ESCUDERO; JOHN HUBBARD, National Health Service Corps; DONALD L. WEAVER, Director of National Health Service Corps; and MYRIAM CURET,

Defendants - Appellees.

No. 96-2288
(D. New Mexico)
(D.C. No. 96-CV-52-LH)

## ORDER AND JUDGMENT[*]

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9. This cause is therefore ordered submitted without oral argument.

The United States obtained a judgment against Appellant Brett L. Arron after he breached the terms of his National Health Service Corps scholarship agreement. In lieu of paying the judgment, Arron agreed to work for the Indian Health Service for two years. During his first year as a probationary employee, however, the Indian Health Service terminated Arron's employment. After pursuing his remedies for wrongful termination under the Civil Service Reform Act, Arron brought two separate actions in the District Court of New Mexico, seeking redress for his grievances arising from his termination. The district court dismissed the actions, and denied Arron's motions for leave to amend. We consolidate Arron's appeals from the district court's order in each case; and because

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

we find that the Civil Service Reform Act preempts Arron's claims, we affirm both judgments.

## BACKGROUND

The seeds of this dispute were planted on May 1, 1979, when Arron applied for a National Health Service Corps (NHSC) scholarship in order to finance his medical education at Tulane University. Congress created the NHSC "to provide primary health services in health professional shortage areas." 42 U.S.C. § 254d(a)(2). The NHSC provides scholarships to students in certain health care education programs and, in return, the students agree to work for a certain period of time in health professional shortage areas. 42 U.S.C. §§ 254*l*(b)(4), 254m(a). During the time that a scholarship recipient is performing the service obligation, the recipient becomes either a member of the federal civil service or a commissioned officer of the Public Health Service. 42 U.S.C. §§ 254d(a)(1), 254m(b)(1)(A)-(B).

Arron received the scholarship and executed a contract in which he agreed to serve one year as a member of the NHSC and to provide clinical services in a designated health professional shortage area for each year of the award. Thereafter, he received $27,835 for two academic years. Following his studies at Tulane, Arron received a deferment from his service obligation in order to complete a three-year residency in internal medicine. See 42 U.S.C. § 254m(b)(5)(A)(i) (authorizing deferment to allow

scholarship recipient to complete a residency). A dispute developed between Arron and the NHSC regarding his deferment for his third year in residency and the location where he would perform his service obligation. The NHSC eventually notified Arron that he was assigned to a clinic in Texas, but Arron refused to accept this assignment. The United States filed suit against Arron seeking damages for his breach of the scholarship contract. See 42 U.S.C. § 254*o*(b)(1)(A) (setting forth damages formula in the event a scholarship recipient fails to begin service obligation). The District Court for the Eastern District of Louisiana entered judgment against Arron for $221,131.62, and the Fifth Circuit affirmed. United States v. Arron, 954 F.2d 249, 251, 253 (5th Cir. 1992).

In lieu of paying the judgment, Arron agreed to serve two years in a designated health professional shortage area. During the two years of service, the judgment debt would be reduced by approximately $10,000 per month and, at that rate, the entire judgment would be satisfied at the end of the two years of service. Accordingly, on about August 8, 1992, Arron became a member of the federal civil service and began working as an anesthesiologist, in probationary employee status for the first year, at the Gallup Indian Medical Center (the Gallup Center), a medical facility in Gallup, New Mexico. The Gallup Center operates under the purview of the Indian Health Service, which is a component of the Public Health Service and the United States Department of Health and Human Services. Arron alleges that while he was employed at the Gallup Center, the Center was badly mismanaged and provided substandard care to its patients. Arron

alleges that he refused to provide substandard care and "[m]ade various reports" about the mismanagement and care problems at the Gallup Center. Appellant's App. in First Action at 13 (Compl.); Appellant's App. in Second Action at 43 (Am. Compl.). He contends that because of his refusal to provide substandard care and because he reported the mismanagement and care problems, he was wrongfully terminated on June 5, 1993.

The Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C., primarily §§ 1214, 2302), provides federal employees procedures for redressing grievances regarding their employment. Because Arron was terminated during his probationary period, he was entitled to minimal procedural protections from the Indian Health Service. The agency was only required to "notify[] him in writing as to why he [was] being separated and the effective date of the action." 5 C.F.R. § 315.804(a). The agency was also required to indicate in the notice its "conclusions as to the inadequacies of his performance or conduct." Id.

Under the CSRA, all employees, including probationary employees, are entitled to report to the Office of Special Counsel that they have been subjected to a "prohibited personnel practice." 5 U.S.C. § 1214(a)(1)(A).[1] Special Counsel is required to

---

[1]"Prohibited personnel practice[s]" include (1) taking a personnel action with respect to any employee "because of . . . any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences . . . a violation of any law, rule, or regulation, or [] gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety" (whistleblowing), (2) taking a personnel action against any employee "for refusing to obey an order that would require the individual to violate a law," (3) discriminating against any employee "on the
(continued...)

"investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." Id. If Special Counsel determines that there are reasonable grounds to believe that a personnel action was taken or is to be taken as a result of a prohibited personnel practice, the following relief is available: (1) Special Counsel may request the Merit Systems Protection Board (Board) to order a stay of the personnel action, 5 U.S.C. § 1214(b)(1)(A)(i); (2) if Special Counsel determines that corrective action is required, it must report the determination to the Board, the agency involved, and the Office of Personnel Management, 5 U.S.C. § 1214(b)(2)(B); (3) if the agency does not take corrective action within a reasonable period of time, Special Counsel may petition the Board for corrective action, 5 U.S.C. § 1214(b)(2)(C); and (4) if Special Counsel petitions the Board, the Board must receive comments from Special Counsel, the agency, the Office of Personnel Management, and the employee, and then order such corrective action as it considers appropriate. 5 U.S.C. § 1214(b)(3)-(4).

If Special Counsel determines that there are not reasonable grounds to believe that a personnel action was taken or is to be taken as a result of a prohibited personnel

---

[1](...continued)
basis of conduct which does not adversely affect the performance of the employee . . . or the performance of others," (4) taking a personnel action which "violates any law, rule or regulation implementing, or directly concerning, the merit system principles" set forth at 5 U.S.C. § 2301. 5 U.S.C. § 2302(b)(8)(A), (9)(D), (10), (11). One such merit principle provides that "[a]ll employees . . . should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2).

practice, it may terminate the investigation. If Special Counsel terminates the investigation, it must notify the employee of: (1) the "relevant facts ascertained by the Special Counsel, including the facts that support, and the facts that do not support, the allegations;" and (2) the reasons for the termination. 5 U.S.C. § 1214(a)(2)(A).

If Special Counsel terminates an investigation regarding an allegation that the employee was subjected to a prohibited personnel practice in retaliation for whistleblowing, as defined in 5 U.S.C. § 2302(b)(8), the employee is entitled to file an individual right of action in order to seek corrective action directly from the Board. 5 U.S.C. §§ 1214(a)(3), 1221(a). The Board must order "such corrective action as the Board considers appropriate if the employee . . . has demonstrated that a disclosure described under section 2302(b)(8) was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1). However, the Board may not order corrective action if the agency demonstrates "by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2). The employee may appeal the Board's final decision to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. §§ 1221(h), 7703(b)(1).[2]

---

[2]These provisions, providing greater protections within the CSRA scheme to whistleblowers, were enacted as part of the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16, (codified in scattered sections of 5 U.S.C.), an amendment to the CSRA.

On June 14, 1993, Arron filed a complaint with the Office of Special Counsel, alleging that he was subjected to prohibited personnel practices, including retaliation for whistleblowing. Special Counsel declined to seek a stay of Arron's termination or any other corrective action from the Board. Then, on November 18, 1994, Special Counsel issued a letter declining to proceed with the whistleblower complaints. Arron filed an individual right of action appeal, seeking corrective action from the Board regarding his whistleblower complaints. According to the record, that appeal is pending.

Thereafter, in August of 1995, Arron sued the United States in district court. In his complaint, Arron alleged that his supervisors failed to follow personnel policies in managing the Gallup Center, failed to follow personnel policies in terminating Arron, and terminated Arron in retaliation for his refusal to provide substandard care and because he reported problems regarding the Center. Based on these allegations, Arron claimed that the United States was liable under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq.,[3] for various state torts, including negligence, retaliatory discharge, prima facie tort, and tortious interference with economic advantage. Arron claimed that as a result of his termination he suffered "moving costs, loss of income, damage to reputation, emotional distress, loss of ability to repay the NHSC obligations, increased costs, interest and penalties on the judgment, costs of seeking other

[3]The Federal Tort Claims Act provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674.

employment, loss of personal property through execution on the above judgment, attorneys fees and general damages." Appellant's App. in First Action at 16 (Compl.).

The United States moved to dismiss Arron's complaint, arguing that the Civil Service Reform Act provides the exclusive remedy for his grievances regarding his employment. In response, Arron moved for leave to amend his complaint to add a claim under the Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq.,[4] and to add additional defendants. Arron's proposed amended complaint alleged that his supervisors' actions were arbitrary and capricious, violated his constitutional rights, and violated procedures required by law. The district court granted the United States' motion to dismiss with prejudice and denied Arron's motion for leave to amend as futile.

However, in January of 1996, before the district court made these decisions in the first action, Arron brought a second action, naming the United States, the Department of Health and Human Services, the Indian Health Service, the Navajo Area Indian Health Service, the National Health Service Corps, and certain employees of these agencies (in

---

[4]The Administrative Procedures Act provides that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

their individual and official capacities) as defendants (the Defendants). His first amended complaint contained substantially the same allegations as the complaint in the first action and claimed (1) that the Defendants violated Arron's First, Fourth, and Fifth Amendment rights to free speech, freedom of association, substantive and procedural due process rights, freedom from deprivation of liberty and property interests, and right of privacy, and (2) that the Defendant's actions were arbitrary and capricious. Appellant's App. in Second Action at 62 (Am. Compl.). As relief, Arron requested that the court declare that the Defendants acts were unlawful and unconstitutional, restore him to his position with back pay, grade, benefits, and full credit toward the judgment, and award him costs and attorney's fees.

The Defendants moved to dismiss Arron's amended complaint in the second action, also arguing that the Civil Service Reform Act provides Arron's exclusive remedy for his grievances. In response, Arron moved for leave to amend his complaint to make further allegations regarding his Fifth Amendment claim in the event the court found this claim insufficient. The district court granted the Defendants' motion to dismiss with prejudice and denied Arron's motion for leave to amend as futile.

**DISCUSSION**

We review de novo a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th

Cir. 1995); Steele v. United States, 19 F.3d 531, 532 (10th Cir. 1994). In doing so, we accept all well-pleaded allegations as true and uphold a dismissal only if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Maez, 54 F.3d at 1496.

We review a district court's denial of a motion for leave to amend for abuse of discretion. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993); TV Communications Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992). "Although Fed.R.Civ.P. 15(a) requires leave to amend be given freely, that requirement does not apply where an amendment obviously would be futile." TV Communications, 964 F.2d at 1028. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. TV Communications, 964 F.2d at 1028.

In Bush v. Lucas, 462 U.S. 367 (1983), the Supreme Court addressed the remedial scheme of the CSRA, stating that "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures--administrative and judicial--by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies." Id. at 385. Because of the CSRA's comprehensive remedial scheme, the Bush Court refused to recognize a Bivens remedy, under the facts of that case, for the alleged violation of First Amendment rights in federal personnel decisions. Id. at 390.

Several years later, the Supreme Court in United States v. Fausto, 484 U.S. 439 (1988), was presented with the question of whether the CSRA, which provides no review of an agency's decision to suspend a nonpreference eligible excepted service employee without pay, precluded the employee from seeking review in the Court of Federal Claims under the Back Pay Act. Id. at 440-41. The Court noted that Congress intentionally excluded nonpreference eligible excepted service and probationary employees from the right to review of certain agency actions afforded other categories of employees and, thus, held that the CSRA's "deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act." Id. at 455.

Based on the principles of Bush and Fausto, we have stated that it is "beyond dispute that the CSRA was intended to provide the exclusive procedure for challenging federal personnel decisions." Petrini v. Howard, 918 F.2d 1482, 1485 (10th Cir. 1990). Accordingly, we have held that "Federal and state court actions 'complain[ing] of activities prohibited by the CSRA . . . are preempted by the CSRA.'" Steele v. United States, 19 F.3d 531, 533 (10th Cir. 1994) (quoting Petrini, 918 F.2d at 1485). Arron's FTCA claims and proposed APA claim in the first action, as well as his APA claim and constitutional claims[5] in the second action--all of which challenge the conditions of his

[5]There is some dispute about whether Arron's constitutional claims in his second (continued...)

employment, the procedures or lack of procedures leading up to his termination, and the termination of his employment--fall within the scope of, and are, therefore, preempted by, the CSRA. See 5 U.S.C. § 2302 (broadly defining "prohibited personnel practice"); supra n.1 (listing prohibited personnel practices at issue in this case).[6]

Although acknowledging this weighty precedent, Arron argues, primarily, (1) that this court should reexamine the trend of cases regarding the preemptive effect of the CSRA, and follow the dissent in Fausto, (2) that "as an NHSC payback scholar and debtor, [he] has a higher expectation and right to judicial protections than the 'mine run' probationary employee," Appellant's Br. in First Action at 10, and (3) that he should be

---

[5](...continued)
action are Bivens claims for damages or claims for equitable relief. In his brief on appeal, Arron contends that he is "seeking declaratory, Mandamus and equitable relief in this action, not money. Therefore, none of the cases holding that Bivens remedies are barred by the CSRA apply, because this is not a Bivens action." Appellant's Br. in Second Action at 11. The Defendants maintain that Arron argued before the district court that he should be able to maintain a Bivens action. Thus, they assert that he "should not now be able to refocus his argument on an issue not presented below and ask this Court to allow him to pursue non-Bivens constitutional claims." Defendants' Br. at 15. However, whether we construe Arron's constitutional claims as Bivens or equitable claims, both are federal actions complaining of activities prohibited by the CSRA and, thus, are preempted under our case law.

[6]Our holding is consistent with numerous cases specifically holding that the CSRA preempts FTCA claims, see Steele, 19 F.3d at 533; Petrini, 918 F.2d at 1485; Grisham v. United States, 103 F.3d 24, 27 (5th Cir. 1997), APA review, see McAuliffe v. Rice, 966 F.2d 979, 979 (5th Cir. 1992); Stephens v. Department of Health & Human Servs., 901 F.2d 1571, 1575 (11th Cir. 1990); Ryon v. O'Neill, 894 F.2d 199, 200 (6th Cir. 1990), Bivens actions, see Bush, 462 U.S. at 390; Brothers v. Custis, 886 F.2d 1282, 1284-85 (10th Cir. 1989); Saul v. United States, 928 F.2d 829, 840 (9th Cir. 1991), and actions for equitable relief for constitutional violations, see Lombardi v. Small Bus. Admin., 889 F.2d 959, 961-62 (10th Cir. 1989); Saul, 928 F.2d at 843.

entitled to judicial review under the APA because even if the Board ordered him restored to his employment status, it could not compel the NHSC to approve the assignment for service credit and could not compensate him for his damages caused by the loss of his ability to satisfy the judgment through service.

As for Arron's first argument, this court is bound by the Fausto majority and our precedent regarding the CSRA's exclusive remedial scheme. As for Arron's second and third arguments, we are not convinced that he should be exempted from the CSRA's exclusive remedial scheme. Although we recognize that Arron's employment with the federal civil service is somewhat unique because he accepted such employment in lieu of paying his judgment debt to the United States, we do not believe that his status affords him any greater procedural or substantive protections than any other federal employee. If Congress wished to give NHSC scholarship recipients or judgment debtors greater protections, it certainly could have done so. We do not believe that a judicially-created exception to the CSRA's exclusive remedies is appropriate.

Furthermore, that the FTCA, APA, and constitutional claims would afford Arron greater opportunities for judicial review and greater compensation for his alleged injuries does not alter our analysis. See Fausto, 484 U.S. at 455 (holding CSRA preempts action under Back Pay Act even though CSRA provided nonpreference excepted service employee no administrative or judicial review of agency's decision); Bush, 462 U.S. at 372, 390 (holding CSRA preempts Bivens action even though Court assumed that the

"civil service remedies were not as effective as an individual damages remedy and did not fully compensate [the employee] for the harm he suffered"); Brothers v. Custis, 886 F.2d 1282, 1284 (10th Cir. 1989) (refusing to imply Bivens action even though federal employee was limited to petitioning Special Counsel and did not have a money damages remedy); Hill v. Department of Air Force, 884 F.2d 1318, 1321 (10th Cir. 1989) ("Even if the Civil Service Reform Act remedy were incomplete, but had not inadvertently omitted damages remedies, no Bivens remedy would be implied."). Likewise, Arron's contention that the Board could not compel the NHSC to approve service credit if he is restored to his position does not help him. In the event that the Board restores him to his position and the NHSC refuses to approve such service, Arron may then seek any applicable remedies against the NHSC.[7]

Because Arron's FTCA, APA, and constitutional claims are preempted by the CSRA, the district court properly granted the United States' and Defendants' motions to dismiss in each action, and properly denied Arron's motions for leave to amend. Accordingly, we AFFIRM. The parties' motions for consolidation are GRANTED and all other outstanding motions are DENIED.

---

[7]Arron argues that his amended complaint in the second action states a claim against the NHSC for refusing to place him in a new position following his termination and that such a refusal is not a "personnel action" under the CSRA. See Appellant's Br. in Second Action at 11, 17. Because Arron makes this argument for the first time on appeal, we will not consider it. Sac & Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir.), cert. denied, 116 S. Ct. 57 (1995).

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge