Terrence DAVIS, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

Michael J. ASTRUE, Commissioner of
the Social Security Administration,
Defendant.

No. C 06–06108 MHP.

United States District Court,
N.D. California.

May 2, 2008.

Steven F. Bruce, People With Disabilities Foundation, for Plaintiff.

Andrew Y.S. Cheng, U.S. Attorney's Office, San Francisco, CA, for Defendant.

### MEMORANDUM & ORDER

### Re: Motions for Leave to Amend Second Amended Complaint and for Class Certification

MARILYN HALL PATEL, District Judge.

Plaintiff Terrence Davis filed this putative class action against the Commissioner of Social Security on September 29, 2006. On December 19, 2007 Davis filed two motions before the court: 1) a motion seeking leave to file a Proposed Third Amended Complaint ("PTAC"), which would amend the Second Amended Complaint ("SAC"); and 2) a motion for class certification pursuant to Federal Rule of Civil Procedure 23. These two motions are now before the court. Having considered the parties' submissions and arguments, and for the reasons set forth below,

the court enters the following memorandum and order.

## BACKGROUND

Plaintiff Davis is a San Francisco resident suffering from chronic schizophrenia. PTAC ¶¶ 1, 4. In 1985 the Social Security Administration ("SSA") found Davis to be disabled due to severe mental disability. *Id.*, ¶ 4. On April 2, 2004 the SSA issued Davis a Notice of Disability Cessation based on a "work review," which indicated that Davis had been gainfully employed and therefore not entitled to social security benefits. *Id.*, ¶ 5. SSA determined that Davis had not qualified for disability benefits since August 1999, and assessed an overpayment of $66,964. *Id.* It subsequently reduced this assessment to $47,044. *Id.* SSA also conceded that they incorrectly terminated Davis' benefits. *Id.*, ¶ 8. Davis claims that he suffered increased stress and anxiety as a result of this termination process, which required him to increase the frequency of his therapy appointments.[1] *Id.*, ¶ 9.

Plaintiff asserts that he was not afforded the same procedures provided to people with physical—as opposed to mental—disabilities who are subject to work reviews. *Id.* In particular, plaintiff claims that he was neither given a comprehensive review by the local field office involving consideration of pertinent factors, nor was he given a meaningful opportunity to appeal his initial decision before his claims file was processed for termination. *Id.*, ¶¶ 2–3.

Plaintiff filed his initial complaint on September 29, 2006. He amended the complaint as a matter of course on November 6, 2006 before defendant had served a responsive pleading. In the First Amended Complaint ("FAC"), Davis alleged various causes of action, including: (1) violations under the Rehabilitation Act; (2) Fifth Amendment Due Process Clause violations; (3) Freedom of Information Act ("FOIA") violations; and (4) bad faith conduct. Defendant moved to dismiss for lack of subject matter jurisdiction or, in the alternative, failure to state a claim upon which relief can be granted. This court granted defendant's motion to dismiss, but granted Davis twenty days in which to amend his complaint. This court specified that Davis could amend his complaint only as to the Rehabilitation Act claim. *See* Docket No. 26.

In response to this court's order, Davis filed the SAC on April 23, 2007. In the SAC, Davis alleged (1) Rehabilitation Act violations and (2) "Bad Faith" claims, including the SSA's failure to comply with a FOIA request. This court subsequently struck Davis' entire "Bad Faith" claim and held that his "sole cause of action" existed under the Rehabilitation Act. *See* Docket No. 42. Defendant then filed an Answer to the SAC on July 30, 2007.

On December 19, 2007 Davis filed the PTAC, which seeks to make three additions to the SAC. First, Davis seeks to join John Doe [2] ("proposed plaintiff Doe") and Timothy Gibler ("proposed plaintiff Gibler") as additional named plaintiffs. Proposed plaintiffs Doe and Gibler are residents of San Francisco who have received SSA benefits as a result of their mental disabilities. PTAC ¶¶ 1, 10, 15, 22, 24. Davis alleges that both proposed plaintiffs could not join this lawsuit sooner because they have difficulties making decisions due to their mental disabilities. *Id.*, ¶¶ 14, 23. Like Davis, proposed plaintiffs Doe and Gibler stopped receiving SSA benefits as a result of SSA work reviews. *Id.*, ¶¶ 19, 29.

Second, Davis re-alleges at least four violations of the Rehabilitation Act that were previously claimed in the SAC and newly alleges at least three additional Rehabilitation Act claims. Specifically, plaintiff newly alleges that the SSA violates the Rehabilita-

---

1. This court finds that Davis neither points out nor justifies the late appearance of some new information in the PTAC. *Compare* PTAC ¶ 9 (identifying plaintiff Davis' doctors and his frequency of treatment), *with* SAC ¶ 34 (stating only that plaintiff Davis "needed increased anti-psychotic medication and/or psychotherapy"). What plaintiff Davis stands to gain from this type of late insertion is unclear, given that this court,

and all federal courts, use notice pleading. What plaintiff Davis stand to lose, however, is significant, as this court does not take kindly to such tactics, be they deception or merely sloppy drafting.

2. The identity of proposed plaintiff Doe is protected pursuant to Civil Local Rule 79.5.

tion Act by: 1) failing to send notice of benefits termination to a mentally disabled beneficiary's designated contact person; 2) ignoring and failing to expand SSA policies and procedures to increase equal access; and 3) failing to provide a claims representative ("CR") trained in communicating with mentally disabled beneficiaries in each field office. *Id.*, ¶¶ 57–64.

Third, Davis seeks to amend the SAC to include two FOIA claims: 1) a claim that was previously dismissed by this court, arguing that the SSA wrongfully refused to satisfy a FOIA request for statistical analysis of SSA practices, *id.*, ¶ 66; Docket No. 26; and 2) a new claim contending that the SSA has also violated FOIA by refusing to turn over independent investigative reports relating to the plaintiff's class action complaints, PTAC ¶ 67.

In addition to seeking leave to amend the complaint, Davis has filed for class certification. Davis purports to represent a class consisting of "[a]ll current and future applicants, beneficiaries, and recipients of SSA program benefits who have disabilities which are primarily mental (invisible) and who have made, are making, or in the future may make attempts to work in the national economy." Motion to Certify at 9. According to plaintiff, this class definition is appropriate because SSA systematically terminates the benefits of persons with mental disabilities based on work reviews by failing to apply treatment equal to the treatment given to persons with physical disabilities. *Id.* at 4–11. In particular, plaintiff identifies the following failings on the part of SSA: 1) failing to provide training to CRs regarding mental disorders and anti-psychotic medication that is equivalent to the training provided regarding non-mental disabilities; 2) failing to apply factors to persons with mental disabilities equivalent to those for persons with non-mental disabilities before terminating benefits based on work continuing disability review ("work CDR") determinations; and 3) authorizing "low level" CRs to terminate Social Security benefits without seeking professional input. *Id.* at 6–7. Plaintiff asserts that the CRs are bound by an unlawful internal SSA policy that requires them to apply a "mechanical formula" without taking into account the spe-

cific circumstances applicable to a mental health patient. *Id.*

The court first discusses the PTAC followed by the motion for class certification.

## MOTION FOR LEAVE TO AMEND SECOND AMENDED COMPLAINT

### STANDARD OF REVIEW

A party may amend a pleading once as a matter of course and thereafter may only amend the complaint by consent of the opposing party or leave of the court. Fed. R.Civ.P. 15(a). The federal rules require that "the court should freely give leave when justice so requires." *Id.* However, a court's decision to grant leave to amend is ultimately discretionary. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir.2004). This discretion is particularly broad where the court has previously granted leave to amend the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990) (finding it "implausible to suggest that justice somehow requires" the court to grant leave to amend the complaint for the third time); *accord Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (noting that a motion for leave to amend may be denied where the trial court finds a "repeated failure to cure deficiencies by amendments previously allowed.").

The Ninth Circuit uses five factors to determine when a trial court should grant leave to amend a complaint: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Allen*, 911 F.2d at 373 (citation omitted); *accord Foman*, 371 U.S. at 182, 83 S.Ct. 227. However, these factors need not all be considered in each case. The third factor, prejudice to the opposing party, is the "touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003) (citations omitted). A court may also be persuaded to deny leave under only the fifth factor, consider-

ation of previous amendments, "when the movant present[s] no new facts but only new theories and provide[s] no satisfactory explanation for his failure to fully develop his contentions originally." *Allen,* 911 F.2d at 374 (citations omitted).

## DISCUSSION

Plaintiff Davis seeks to amend the SAC in three distinct ways: 1) adding two additional named plaintiffs; 2) expanding claims previously alleged under Section 504 of the Rehabilitation Act ("Section 504"); and 3) expanding previously dismissed FOIA claims. Each of these categories of amendments is considered in turn.

### I. *The Addition of Two Named Plaintiffs*

Davis argues that justice requires this court to grant leave to amend the complaint to add proposed plaintiffs Doe and Gibler for two reasons. First, adding these plaintiffs will decrease the risk of delay in the event that Davis becomes unable to effectively participate with his counsel. Second, the addition will allow the complaint to more accurately reflect the variety of experiences of mentally disabled people. Davis attempts to excuse his delay by arguing that proposed plaintiffs Doe and Gibler could not be added earlier because these proposed plaintiffs needed additional time to decide whether to participate as a result of their mental disabilities. PTAC ¶¶ 14, 23.

■ Davis presents a legitimate concern that he may become incapable of effectively participating with counsel due to his mental disability, which causes episodic and unpredictable periods of decompensation. This condition may disrupt the course of litigation. However, Davis' proposed solution—the addition of other plaintiffs who also suffer from episodic and unpredictable periods of decompensation—does not remedy the potential problem of delay. The addition of proposed plaintiffs Doe and Gibler is not likely to avoid

delay when contact with the SSA triggers anxiety and distress in both proposed plaintiffs, making decompensation more likely.[3] PTAC ¶¶ 21, 31. Further, as even Davis points out, this court already has a mechanism to avoid delay in the event of his decompensation; if necessary, this court may at any time appoint a guardian ad litem to protect plaintiff's interests. *See* Fed. R.Civ.P. 17(c). The currently unmanifested threat of delay is therefore both premature and unpersuasive to convince this court that justice requires the addition of the proposed plaintiffs at this juncture.

Davis next contends that these two proposed plaintiffs better reflect the varied experiences of the mentally disabled. In his initial complaint, Davis asserted that at least one million people with mental disabilities are eligible to participate in this lawsuit. Compl. ¶ 11. However, he only now expresses the theory that the experiences of additional named plaintiffs are necessary to accurately reflect the experiences of the proposed class. Proposed plaintiffs Doe and Gibler's need for additional time may explain why these particular proposed plaintiffs could not decide until recently if they wanted to join the lawsuit. Yet, the needs of these particular proposed plaintiffs do not explain Davis' failure to initially file with other representative parties or his late assertion that additional named plaintiffs are necessary. Davis thus provides "no new facts but only new theories" and has failed to provide the necessary "satisfactory explanation for his failure to fully develop his contentions originally." *Allen,* 911 F.2d at 374 (citations omitted).

Given that Davis has had two prior opportunities to amend his complaint and that additional plaintiffs are unnecessary to advance the underlying Rehabilitation Act claim, justice does not require the addition of the proposed plaintiffs.

---

**3.** Davis suggests that this argument amounts to a conclusion that the proposed plaintiffs should not be permitted to assert their human and civil rights as a result of their mental disabilities. Plaintiff's argument is both inflammatory and untenable. Proposed plaintiffs had every right to timely assert their claims. The issue at present,

however, is whether plaintiff Davis can show why justice requires the addition of *these* proposed plaintiffs to *this* litigation after a fifteen-month period of delay. Only when determining whether plaintiff Davis' justification is valid does this court find the mental disabilities of the proposed plaintiffs significant.

## II. The Addition of Expanded Claims Under Section 504

Davis introduces a variety of new claims under Section 504. A non-exhaustive list of these claims includes allegations that the SSA violates the Rehabilitation Act by: 1) failing to send notice of benefits termination to a mentally disabled beneficiary's designated contact person; 2) ignoring and failing to expand SSA policies and procedures to increase equal access for the mentally disabled; and 3) failing to provide a CR trained in communicating with mentally disabled beneficiaries in each field office. PTAC ¶¶ 57–64. Davis argues that these additions are reasonable because he is attempting to follow this court's April 3, 2007 order to "set forth facts . . . that allege mentally disabled persons are denied meaningful access to social security benefits by reasons of SSA's policies or procedures, spelling out those policies or procedures." Docket No. 26 at 16. Davis further contends that this court should grant leave to amend because he raises no new legal theories—only further support for previously alleged theories.

■ Davis' undue delay and the fact that he has twice previously amended his complaint weigh against granting leave.[4] Allen, 911 F.2d at 373; accord Foman v. Davis, 371 U.S. at 182, 83 S.Ct. 227. Davis' repeated amendments to the complaint require the SSA to expend time and resources in drafting responses. These required outlays prejudice the SSA and therefore weigh against granting leave to amend. Allen, 911 F.2d at 373. In addition, Davis cannot excuse his dilatory assertion of the Section 504 claims found in the TAC by pointing to this court's April 3, 2007 order seeking greater specificity. At that time, this court granted Davis twenty days leave to amend his complaint. Davis' submission of the PTAC a full 259

days later fails to comport with the letter and the spirit of the court's twenty-day leave to amend. The April 3, 2007 order gave plaintiff one opportunity—which he took, timely submitting the SAC on April 23, 2007—to specify his Section 504 claims. Plaintiff will not now be permitted a fourth bite at the same apple.[5] See Allen, 911 F.2d at 373 (finding it "implausible to suggest that justice somehow requires" the court to grant leave to amend the complaint for the third time when no new legal theories were alleged).

## III. The Addition of FOIA Claims

Davis argues that defendant violated the FOIA by wrongfully failing to produce statistical analysis and independent investigative reports related to Davis' lawsuit. Davis had previously asserted the statistical analysis claim, but at that time he had not exhausted administrative remedies and, as a result, this court dismissed the claim for lack of subject matter jurisdiction. Docket No. 26 at 13. Davis has now exhausted the administrative remedies related to both FOIA claims now before the court. Pl.'s Exhs. 11, 12.

Defendant argues that these FOIA claims must be dismissed because the amendments will prove futile upon later examination by the court. Allen, 911 F.2d at 373 (holding that futility supports a court's decision to deny a motion for leave to amend). An amendment is futile if it will be subject to dismissal or summary judgment. Cal. Dep't of Toxic Substances Control, 358 F.3d at 661; Saul v. United States, 928 F.2d 829, 843 (9th Cir.1991). Specifically, defendant argues that the FOIA claims are futile because: 1) the court lacks jurisdiction; 2) SSA properly withheld the documents; and 3) FOIA claims are not amenable to class prosecution.

---

**4.** Davis argues that the Ninth Circuit, in *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987), specifically held that delay alone is insufficient to justify denial of leave to amend. The court in *DCD Programs*, however, footnoted the very sentence cited by Davis to clarify that past grants of leave to amend may justify denial of additional leave. Distinguishing grants of past amendments from general undue delay, the court noted that "a district court's discretion over amendments is especially broad where the court

has already given a plaintiff one or more opportunities to amend his complaint." *Id.* (citations omitted).

**5.** Davis' failure to earlier present these Section 504 claims is particularly inexplicable when some of these claims were also at issue in prior litigation filed by proposed Plaintiff Gibler while represented by Davis' counsel.

## A. *Jurisdiction*

Defendant contends that federal court jurisdiction over a FOIA claim exists only when a party has exhausted administrative remedies *prior* to filing suit. *See In re Steele*, 799 F.2d 461, 466 (9th Cir.1986); *Barch v. Hawaii Dep't of Labor & Indus. Relations*, No. 04–00712 SOM/BMK, 2006 WL 3078933, at *11 (D.Hi. Oct. 26, 2006).

■ Neither precedent nor policy support the SSA's rigid interpretation of the law. In *Steele*, the court dismissed plaintiffs' FOIA claims for lack of jurisdiction because, even on appeal, plaintiffs had failed to exhaust administrative remedies. 799 F.2d at 466. The court held that jurisdiction is absent "where no attempt to comply fully with agency procedures has been made." *Id.* Such is not the case here, as plaintiff Davis has now exhausted the administrative remedies related to his FOIA claims.

Defendant also relies on the District of Hawaii's holding in *Barch*, which dismissed a FOIA claim for lack of jurisdiction when plaintiffs exhausted administrative remedies after filing suit. Notably, however, *Barch* dismissed the FOIA claims without prejudice and granted plaintiffs leave to file another complaint. 2006 WL 3078933, at *11. Such a circuitous ruling is unnecessary at present. Dismissal without prejudice and with the expectation that Davis would re-file his FOIA claims would be a needless waste of judicial resources. Consequently, the rationale in *Barch* is unpersuasive.

## B. *Documents Properly Withheld*

Defendant next argues that inclusion of the FOIA claims in the TAC is futile because the SSA properly withheld requested documents on the basis of attorney-client and work-product privileges. 5 U.S.C. § 552(b)(5). The pleadings and motions, however, contain no support for this allegation. Therefore, futility has not been shown because defendant has failed to prove that FOIA claims will be subject to dismissal or summary judgment. *See Cal. Dep't of Toxic Substances Control*, 358 F.3d at 661; *Saul*, 928 F.2d at 843.

## C. *FOIA Claims and Class Prosecution*

Finally, defendant contends that FOIA amendments are futile because FOIA claims are not amenable to class prosecution. Defendant's sole support for this broad assertion is a non-binding decision that did not concern FOIA claims. *See Kennecott Utah Copper Corp. v. U.S. Dept. of the Interior*, 88 F.3d 1191 (D.C.Cir.1996). Given that the Ninth Circuit has considered FOIA claims in the context of a class prosecution, the court is not persuaded that granting class certification will render Davis' FOIA amendments futile. *See, e.g., Andrew v. Bowen*, 837 F.2d 875 (9th Cir.1988) (concerning a class action suit filed under the FOIA).

## D. *Summary*

In addition to futility, *Allen* directs the court to consider: 1) bad faith; 2) undue delay; 3) prejudice to the opposing party; and 4) previous amendments to the complaint. 911 F.2d at 373. Given that none of defendant's three futility arguments is persuasive, the court now turns to the other factors set out in *Allen* to determine if it should grant leave to amend the SAC.

■ Davis could not earlier amend the complaint to include the FOIA claims because the court lacked subject matter jurisdiction before Davis had exhausted his administrative remedies. Docket No. 26 at 13. Plaintiff timely pursued and exhausted these required administrative remedies before submitting the PTAC. *See* Pl.'s Exhs. 11, 12. As a result, the court finds no evidence of bad faith or undue delay. Prejudice to the SSA, however, is likely to result because granting leave to amend will require defendant to commit time and resources in order to draft a response. However, this prejudice appears unavoidable in light of the expectation that Davis will re-file his FOIA claims if the court denies his motion to amend the complaint.

In light of the other *Allen* factors, Davis' previous amendments to the complaint alone do not weigh against granting leave to amend the FOIA claims in the instant scenario. As a result, the court GRANTS Davis' motion for leave to amend with respect to his FOIA claims only.

*MOTION FOR CLASS CERTIFICATION*

*STANDARD OF REVIEW*

To certify a class, the four prerequisites enumerated in Rule 23(a) must be satisfied, as well as at least one of the requirements of Rule 23(b). Fed.R.Civ.P. 23. Under Rule 23(a), the party seeking class certification must establish: 1) that the class is so large that joinder of all members is impracticable ("numerosity"); 2) that there are one or more questions of law or fact common to the class ("commonality"); 3) that the named parties' claims are typical of the class ("typicality"); and 4) that the class representatives will fairly and adequately protect the interests of other members of the class ("adequacy of representation"). Fed.R.Civ.P. 23(a). In addition to the explicit requirements set out by Rule 23(a), the class definition must set forth a class which is ascertainable and clearly identifiable. *Lamumba Corp. v. City of Oakland,* No. 05–2712, 2007 WL 3245282 (N.D.Cal. Nov.2, 2007) (Patel, J.). Finally, a party seeking class certification must also show that one of Rule 23(b)'s provisions apply. Fed.R.Civ.P. 23(b); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

█ The party seeking class certification bears the burden of establishing that the requirements of Rule 23(a) and (b) have been met. *Zinser v. Accufix Research Inst.,* 253 F.3d 1180, 1186 (9th Cir.2001), *amended by* 273 F.3d 1266 (9th Cir.2001) (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)). When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975). The merits of the class members' substantive claims are generally irrelevant to this inquiry. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see also Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983). However, courts may "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon,* 976 F.2d at 509 (citing *In re Unioil Sec. Litig.,* 107 F.R.D. 615, 618 (C.D.Cal.1985)); *see also Moore,* 708 F.2d at 480 ("some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a),.....").

*DISCUSSION*

I. *Rule 23(a) Class Certification Requirements*

A. *Certainty*

█ Apart from the explicit requirements of Rule 23(a), "[a]n implied prerequisite to certification is that the class must be sufficiently definite." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.,* No. C 05–2320 SBA, 2006 WL 2642528, at *3 (N.D.Cal. Sep.14, 2006) (Armstrong, J.). The class definition must set forth a class which is ascertainable and clearly identifiable. *Oshana,* 472 F.3d at 513 (citing *Alliance,* 565 F.2d at 977). A defined class "should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal.1998) (internal quotations omitted).

Plaintiff seeks to certify the following class: "[a]ll current and future applicants, beneficiaries, and recipients of SSA program benefits who have disabilities which are primarily mental (invisible) and who have made, are making, or in the future may make attempts to work in the national economy." Motion to Certify at 9. Defendant asserts a number of deficiencies in the class definition, including: 1) a lack of precision regarding terms in the class definition; 2) a lack of precision regarding the term "SSA programs;" 3) uncertainty resulting from including future beneficiaries; 4) uncertainty regarding whether children are included in the class; and 5) problems with including derivative beneficiaries. Each is discussed in turn.

First, defendant asserts that a number of the terms in the class definition are vague. Yet, SSA has formulated definitions which

could easily apply to many of the terms in the class definition. *See, e.g.,* 20 C.F.R. § 404.1505(a) (defining "disability"); *id.* § 404, Subpt. P, App. 1 at 12.00 (listing nine categories of mental disorders); *id.* §§ 404.1571 *et. seq.* (discussing work and required substantial gainful activity requirement).

Second, defendant asserts that "SSA programs" is vague. However, plaintiff's SAC implicitly indicates that the SSA programs at issue in this litigation include those providing benefits under "Title II and/or Title XVI." SAC at 4. Additionally, given the entirety of the class definition, the class of people who are allegedly discriminated against by SSA are readily identifiable. The class consists of current and future SSA program beneficiaries with primarily mental disabilities who have made or will make attempts to work.

■ Third, defendant asserts that future beneficiaries may not properly be included in the class because that creates uncertainty. Plaintiff contends that courts consistently certify classes that look to future members, citing *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and *Armstrong v. Davis,* 275 F.3d 849 (9th Cir.2001). While defendant is correct that including future beneficiaries in the class creates uncertainty as to members of the class, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor,* 184 F.R.D. at 319 (internal quotations omitted). Moreover, because plaintiff is challenging SSA policies and procedures regarding mentally disabled beneficiaries, this is a facial challenge to defendant's conduct, not an as-applied challenge. Therefore, the class may properly · include future beneficiaries. *See Armstrong,* 275 F.3d at 856–57 (affirming class certification based on Rehabilitation Act claims where class was defined as "all present and future California state prisoners and parolees with" certain disabilities).

Fourth, defendant argues that it is unclear whether disabled children are included in the class. Children can qualify for SSI benefits, and if a disabled child does not currently qualify, but may later, the child could be a future beneficiary. As such, disabled children could be included in the class if the rest of the requirements are met. Defendant cites to *Lamumba,* 2007 WL 3245282, in support of its argument regarding beneficiaries making future attempts to work. That case in inapposite, however, because this court rejected the class definition there because it involved the subjective state of mind of the potential class members. The phrase "in the future may make attempts to work" does not base inclusion on the subjective state of mind of the class member.

Finally, defendant asserts that derivative beneficiaries could be included in the class definition. This argument has merit because plaintiff's class definition fails to link the class member's status as a SSA beneficiary to the member having a mental disability. Without this link, the class includes SSA beneficiaries who have a mental disability but are not an SSA beneficiary for that reason. The class definition requires modification in this respect. The modification is straightforward and the class can be defined as: "[a]ll current and future recipients of SSA benefits, who receive benefits based on a primarily mental (invisible) disability, and who have made, are making, or in the future may make attempts to work in the national economy."

In sum, this requirement is met.

### B. *Numerosity*

■ Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement. *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[1][b] (3d ed.2004). Although plaintiff need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient. *See Freedman v. Louisiana–Pac. Corp.,* 922 F.Supp. 377, 398 (D.Or.1996); 7 Wright, Miller, & Kane, *Federal Practice and Procedure* § 1762 (3d ed.1995). The plaintiff "must proffer evidence of the number of members in the

purported class, or at least a reasonable estimate of that number." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3] (3d ed.2004).

Plaintiff alleges that the defined class includes over one million class members. Additionally, plaintiff asserts that because the class includes future beneficiaries who may attempt to work, the class is so numerous that joinder of all members is impracticable. Defendant responds by arguing that the statistics plaintiff uses to arrive at over one million class members are not sufficiently linked to the proposed class. Specifically, plaintiff relies on the SSA's Annual Statistical Report on Social Security Disability Insurance ("SSDI") Program from 2006 for evidence of the size of the proposed class. This report shows that in 2006 there were 1,947,274 disabled people with mental disorders other than retardation receiving SSDI benefits. *See* Dkt. No. 57, Exh. 9. Plaintiff also alleges that the class size actually exceeds this number because it does not include purely SSI beneficiaries with mental disorders.

■ As defendant points out, this general evidence is speculative. First, plaintiff fails to put forth evidence regarding the number of mentally disabled SSA program beneficiaries who have made or are making attempts to work in the national economy. In other words, the court has no evidence regarding what percentage of the 1,947,274 mentally disabled SSDI beneficiaries have attempted or are attempting to work. Additionally, the relevant class of potential plaintiffs is still a subset of the unidentified percentage noted above because the relevant beneficiaries must not only attempt to work, but must also be subject to CDRs that would result in a "Notice of Disability Cessation." Plaintiff has not established who is subject to CDRs, nor when these reviews result in a "Notice of Disability Cessation." As a result, the court cannot currently ascertain an approximate number for the potential size of the proposed class.

However, given the sheer volume of SSDI beneficiaries with mental disabilities, not to mention SSI beneficiaries, it is hard to contemplate that there are not at least forty-one

people who meet the definition. *See e.g. Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995); *see also Jordan v. Los Angeles County,* 669 F.2d 1311, 1319–20 n. 9, n. 10 (9th Cir.1982) (collecting cases on numerosity requirements), *rev'd on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Consequently, plaintiff should be able to meet this requirement with further evidence. At this time, however, plaintiff has failed to put forth non-speculative evidence of the number of members included in the proposed class. The statistical evidence plaintiff has put forth is deficient because it fails to create a general idea of the size of the class. In sum, this requirement has not been met.

### C. *Commonality*

■ To fulfill the commonality prong, plaintiff must establish that there are questions of law or fact common to the class as a whole. Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) does not mandate that each member of the class be identically situated, only that there be substantial questions of law or fact common to all. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir. 1964). Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

Defendant asserts that this action requires individualized determinations based on the specific disabilities of each potential class member. Defendant claims that the allegations in this action are different from those in which a uniform response could be derived because "meaningful access" is an inquiry that must look at each individual's level of or lack of access. Opp. at 8–9.

Plaintiff, however, brought this action as a facial challenge to the SSA's policies and procedures surrounding determinations of "substantial gainful work activity" and benefits terminations for mentally disabled beneficiaries. Plaintiff asserts that SSA's policies and procedures in making these determina-

tions result in violations of the Rehabilitation Act. Defendant's arguments that "meaningful access" under the Rehabilitation Act must be determined on a case-by-case basis are inapposite because plaintiff is not asserting that the individual application of the policies is in violation.

Both parties cite *Armstrong*, 275 F.3d 849, for their respective positions. In *Armstrong*, numerous disabled prisoners and parolees brought suit against the State of California alleging discrimination and violations of the Rehabilitation Act during parole and parole revocation hearings. *Id.* at 854. The plaintiff class comprised six different categories of disabilities, including mobility impairments, learning disabilities and mental retardation. *Id.* After the district court held that the defendants engaged in systematic and widespread discrimination, the Ninth Circuit affirmed the class certification and system-wide injunction. *Id.* The State argued that the diversity of disabilities represented in the class precluded a finding of commonality. *Id.* at 868. In rejecting this argument, the Ninth Circuit held:

> We reject this approach to class-action litigation. We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality. Certainly, the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions. The commonality requirement is met.

*Id.* at 868 (internal citations omitted); *see also Lancaster v. Tilton*, No. C 79–01630, 2006 WL 2850015, at *8 (N.D.Cal. Oct.4, 2006) (Alsup, J.) (holding that in a challenge to a discriminatory prison policy, the "differing effects that a single policy have on different [plaintiffs] is not sufficient to defeat the assertion of common questions of law or fact"); *Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D.Cal.2007) (Henderson, J.) (holding that

commonality existed because plaintiff class claimed that Secretary of Health and Human Services "failed to comply with his obligations regarding implementation of" Medicare programs).

Like *Armstrong*, plaintiff and his proposed class allegedly suffer a denial of "meaningful access" that directly results from policies instituted by SSA. While defendant is correct that the individuals in the proposed class have unique medical conditions that would impact the type of individualized response required by Section 504, that response is outside the scope of what plaintiff seeks from this action. Plaintiff seeks a declaratory judgment and injunctive relief regarding defendant's policies that allegedly violate Section 504 and discriminate against mentally disabled beneficiaries.

In the instant action, this court previously stated:

> The Ninth Circuit has held that "meaningful access" under the Rehabilitation Act requires an agency to "consider the particular needs of disabled" persons seeking benefits. Additionally, the standard may require the agency to make "reasonable, but not fundamental or substantial, modifications to its programs." The question of reasonableness requires a "fact-specific, individualized analysis" based on the circumstances of the case.

Docket No. 42 at 6–7 (internal citations omitted). Defendant argues that this language demonstrates that a showing of disparate treatment between physically and mentally disabled beneficiaries necessarily requires an individualized determination. However, the individualized determination referenced by this court is one that the agency, SSA, is required to make under the Rehabilitation Act in considering the particular needs of its beneficiaries. This court need not make any individualized determinations.

A contrary holding here would essentially preclude a plaintiff from bringing any class action under the Rehabilitation Act. Yet, courts have held that class actions under the Rehabilitation Act are appropriate. *See, e.g., Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (holding that reduction of inpatient coverage for class of

Medicaid recipients did not violate Rehabilitation Act without questioning propriety of class action under Rehabilitation Act); *Armstrong,* 275 F.3d 849 (holding that requirements for class certification were met and remanding to district court so plaintiffs could add class representatives for certain disabled groups that were missing); *see generally Califano,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (holding that class actions were appropriate in actions brought under Social Security Act, with reasoning applicable to Rehabilitation Act claims based on Social Security benefits).

Further, differences in damages or remedy do not preclude a finding of commonality because these cases turn on "questions of law applicable in the same manner to each member of the class." *Califano,* 442 U.S. at 701, 99 S.Ct. 2545; *see also Hanlon,* 150 F.3d 1011. In *Califano,* the Secretary of Health, Education, and Welfare had determined that SSA beneficiaries had been overpaid and was seeking recoupment of these overpayments. 442 U.S. at 684, 99 S.Ct. 2545. In relevant part, the Supreme Court held that class relief was "peculiarly appropriate" for claims where the issues involved are common to the class and turn on questions of law applicable in the same manner to each member of the class. *Id.* at 701, 99 S.Ct. 2545. The Court further found it "unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Id.* This comports with this court's analysis, *supra,* under *Armstrong* and the related "individualized determinations" argument put forth by defendant.

Finally, defendant argues that the fact that SSA does not use medical evidence in work-based CDRs cannot create commonality. In this action, this court previously stated:

> The fact that the SSA's practice of terminating benefits without considering medical evidence may disproportionately affect mentally ill recipients does not, in and of itself, constitute a violation of the Rehabilitation Act. While a medical review might assist the SSA in determining whether mentally ill recipients should have their

benefits terminated, this additional step is not legally required by Section 504. However, since *Alexander v. Choate* acknowledges that section 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped, plaintiff is given leave to amend this claim to set forth facts, if he can, that allege mentally disabled persons are denied meaningful access to social security benefits by reason of SSA's policies or procedures, spelling out those policies or procedures.

Docket No. 26 at 15–16. Although Section 504 does not legally require medical reviews, it does require SSA to make individualized determinations, as described above. Medical reviews may be part and parcel of the required individualized determinations.[6] However, this has no effect on the common questions of law and fact that exist among the plaintiff class. In sum, because plaintiff has brought this action as a facial attack to the policies SSA has implemented regarding CDRs for mentally disabled beneficiaries, common questions of law and fact exist.

### D. *Typicality*

■ Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class. To be considered typical for purposes of class certification, the named plaintiff need not have suffered a substantially identical wrong. *Hanlon,* 150 F.3d at 1020. Rather, the claims of the putative class must be "fairly encompassed by the named plaintiff's claims." *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364 (internal quotation omitted). The Ninth Circuit has held that "[w]here the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different." *Armstrong,* 275 F.3d at 868–69.

Plaintiff argues that his claims are typical of the class because the manner in which SSA conducts work reviews for beneficiaries with primarily mental disabilities is the same for all class members. Defendant argues

---

**6.** Dr. Fry's declaration is currently premature as expert evidence is unnecessary at this stage in the class certification determination. Therefore, this court will not consider his declaration.

that plaintiff's claims are not typical because: 1) plaintiff does not take advantage of SSA's representative payee system, which would vitiate the alleged stress and injury caused by receipt of SSA mail, and because plaintiff had sufficient earnings to trigger a work CDR; and 2) plaintiff resides in San Francisco and seeks to certify a nationwide class without showing that plaintiff's experiences are typical outside of the San Francisco district SSA office.

*Armstrong* is again instructive. With regard to the typicality inquiry, the court stated that "[w]here the challenged conduct is a policy or practice that affects all class members ... the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong*, 275 F.3d at 868–69. The injuries need not be identical. *Id.* at 869. The plaintiffs in *Armstrong* all suffered identical injuries resulting from a failure to be given accommodations as required by statute and from being objects of discriminatory treatment because of their disabilities. *Id.* Although the plaintiff class included numerous different types of disabilities which resulted in differences in the specific injury suffered, the Ninth Circuit held that these differences were inconsequential to the typicality analysis because "the unnamed class members ha[d] injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.*

■ Similarly, plaintiff in the instant action alleges a discriminatory and illegal course of conduct by the SSA—systematically failing to accommodate people with mental disabilities through mechanical application of a formula to assess ongoing qualification for benefits under a CDR process and ignoring medical evidence of chronic mental disabilities. Consequently, Davis' alleged unique experience with the SSA does not defeat class certification. Moreover, and contrary to defendant's arguments, individualized determinations would not come into play in the

injury analysis in the instant action for all of the same reasons such determinations do not preclude certification under the commonality requirement.

Second, as a federal agency, SSA's policies are nationwide in scope, and if, as plaintiff alleges, defendant is violating the Rehabilitation Act by denying mentally disabled beneficiaries meaningful access to benefits, the injuries are occurring nationwide. Nonetheless, defendant makes a credible argument that plaintiff has failed to bring forth representative plaintiffs from anywhere outside of San Francisco. In *Califano*, the Supreme Court cautioned against the certification of nationwide class actions:

A federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts.

442 U.S. at 702, 99 S.Ct. 2545. If this court is going to certify a nationwide class action in this action, plaintiff must bring forth representative plaintiffs from other parts of the country. This issue is addressed further in the following section.

In sum, the typicality requirement has been met with respect to class members served by the San Francisco SSA district office.

### E.   *Adequacy of Representation*[7]

■ Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment that binds them. *See Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). "Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and

---

**7.** Defendant challenges this court's subject matter jurisdiction with respect to the proposed "future applicants," citing *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)

and *Califano*, 442 U.S. at 701, 704, 99 S.Ct. 2545. However, this argument as been analyzed and rejected in section I(A), *supra*.

absentees, and the unlikelihood that the suit is collusive." *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir.1994) (internal quotation omitted). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020 (citation omitted).

### 1. *Class Representatives*

██ Defendant asserts that Davis and the proposed plaintiffs may not be able to adequately represent the class because they all lack the capacity to withstand the rigors of litigation. Defendant further argues that the named plaintiff is subject to unique defenses "because the injury [he has] alleged for standing purposes is increased mental stress from contact with SSA." Opp. at 15. However, since disabled minors in *Sullivan,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), and mentally retarded women in *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), were approved as class representatives by the United States Supreme Court, there is no reason plaintiff Davis and the proposed plaintiffs could not withstand the rigors of litigation. Indeed, plaintiff chose to bring this litigation in the first instance. Further, aside from the current mental condition of the plaintiffs, there is no evidence to suggest that plaintiff cannot withstand the rigors of litigation.

Plaintiff purports to bring this action as a Rule 23(b)(2) class action, which provides, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief *is appropriate respecting the class as a whole."* Fed. R.Civ.P. 23(b)(2) (emphasis added). If this case is properly brought as a Rule 23(b)(2) class action—*see* section II, *supra*—then the final injunctive or declaratory relief is neces-

sarily appropriate for the entire class. Additional remedial measures may be needed for particular individuals, and those individuals will not be prevented from pursuing those remedies. Consequently, defendant's arguments regarding remedy put the cart before the horse.[8]

Defendant also argues that Davis has a conflict with the proposed class because he does not directly receive mailings from SSA, but instead has mailings sent to his attorney. This is not a potential conflict. If defendant is violating the Rehabilitation Act, then this court could issue a declaration and injunction prohibiting such a violation. However, the burden of integrating proper policies, such as notice mailing practices, would remain on defendant.

Finally, defendant argues that plaintiff has failed to bring forth representative plaintiffs from anywhere outside of San Francisco. As previously noted, the Supreme Court has cautioned against the certification of nationwide class actions. *Califano,* 442 U.S. at 702, 99 S.Ct. 2545. Plaintiff relies on a presumption that SSA's San Francisco district office applies policies consistent with those applicable across the nation. This is not sufficient. If this court is going to certify a nationwide class action in this action, plaintiff must either bring forth representative plaintiffs from other parts of the country who have suffered similar harm resulting from their respective SSA office policies or bring forth evidence that the policies applied by the San Francisco office are applied by all SSA district offices nationwide.

### 2. *Class Counsel*

Plaintiff is represented by Steven Bruce from the People with Disabilities Foundation. Defendant challenges Mr. Bruce's adequacy to represent the class, stating that "proposed class counsel has no experience with class litigation and cites only one unsuccessful federal case as demonstrative of his federal litigation experience." Opp. at 16.

---

**8.** Defendant cites an article describing how some individuals with mental disabilities desire "mainstreaming" in an effort to de-stigmatize mental illness. Mireya Navarro, *Clearly, Frankly, Unabashedly Disabled,* N.Y. Times, May 13, 2007

(available at http://www.nytimes.com/2007/05/13/fashion/13disabled.html). Yet, the article in no way reflects on how potential class plaintiffs would desire different relief from that which plaintiff Davis requests.

Mr. Bruce has experience as a public defender in Florida; as an employee with the United States Department of Health, Education, and Welfare's Office for Civil Rights; as an employee with the United States Department of Health and Human Services' Office for Civil Rights, where he worked on Section 504 cases; as a staff attorney with the SSA's Office of Hearings and Appeals; as a government benefits supervisor for a legal aid office; and as the head of a Social Security disability practice. Bruce Dec., ¶¶ 3–4. Mr. Bruce currently serves as the Executive Director and Managing Attorney of the People with Disabilities Foundation. *Id.,* ¶ 5. Finally, Mr. Bruce previously represented Timothy Gibler in an action against the SSA. *Id.,* ¶ 7.

In light of Mr. Bruce's experience, defendant is correct that Mr. Bruce lacks experience with class action litigation, and this is illustrated in plaintiff's moving papers. Mr. Bruce seems to lack any substantial federal litigation experience, nor has he associated himself with more experienced class counsel in this action. In light of Mr. Bruce's limited class-action experience, the court finds that if Mr. Bruce associates an experienced federal class-action attorney, he can provide adequate representation.

## II. *Rule 23(b)(2) Requirements*[9]

■ A party seeking certification of a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief appropriate. Fed.R.Civ.P. 23(b)(2). For a class to be certified under Rule 23(b) (2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir.1998).

In *Walters,* the Ninth Circuit affirmed a Rule 23(b)(2) class certification where the plaintiffs sought "declaratory and injunctive relief on the ground that the administrative procedures used by the INS to obtain final orders under the document fraud provisions of the Immigration and Naturalization Act of 1990 violated their rights to procedural due process." *Id.* at 1036 (internal citations omitted). The government argued that class certification was improper because numerous individual administrative proceedings were likely to result from the district court's decision. *Id.* at 1047. The Ninth Circuit called this focus a "fundamental misunderstanding" and noted that "[a]bsent a class action decision, individual aliens across the country could file complaints against the INS in federal court, each of them raising precisely the same legal challenge to the constitutionality of the [INS] forms." *Id.* Thus, class certification was aligned with the purposes of Rule 23. *Id.* Furthermore, the Ninth Circuit clarified that the government's "fundamental misunderstanding" of Rule 23(b)(2) was illuminated through a comparison with Rule 23(b)(3), which requires that common issues predominate. *Id.* The Ninth Circuit explained that for Rule 23(b)(2) class actions "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)")).

■ Similarly, plaintiff here complains that SSA uses a mechanical formula for determining when to send ten-day "Notice of Disability Cessation" letters and that this policy fails to take into account individualized factors related to mental disabilities that differ from other disabilities. SAC ¶ 28. Such a policy is applicable to the class as a whole. Plaintiff here asserts that this policy serves

---

**9.** The court questions whether the policy justifications for class action litigation justify class certification in this case. It is questionable whether preserving judicial economy and aggregating small claims that might otherwise fall through the cracks, for example, will really be accomplished by an action that seeks declaratory and injunctive relief which, if plaintiff is successful, would likely affect the wide swath of people he seeks to benefit.

to discriminate against beneficiaries with mental disabilities because this class of beneficiaries is disparately impacted. *Id.,* ¶¶ 24, 30–41. Furthermore, defendant makes arguments here that parallel those made by the defendant in *Walters*—alleged violations of the Rehabilitation Act require a fact-based, individualized analysis, such that a class action is inappropriate. For the same reasons as those stated in *Walters,* the requirements of Rule 23(b)(2) are met.

## CONCLUSION

For the foregoing reasons, the court GRANTS plaintiff Davis' motion for leave to amend only with respect to his FOIA claims and DENIES the motion in all other respects. The amended complaint, if any, shall be filed within twenty (20) days of the date of this order. Defendant shall file its answer within twenty (20) days of the filing of the amended complaint.

Plaintiff's motion to certify pursuant to Rule 23(b)(2) is DENIED. Plaintiff is granted leave to re-file the instant motion within thirty (30) days, if within that period plaintiff can: 1) set forth sufficient admissible evidence to satisfy the numerosity requirement; 2) associate an experienced federal class-action attorney; and 3) either bring forth representative plaintiffs from other parts of the country who have suffered similar harm resulting from their respective SSA office policies or bring forth admissible evidence that the policies applied by the San Francisco office are applied by all SSA district offices nationwide.

IT IS SO ORDERED.